## CITY OF ST. LOUIS, Respondent/Cross–Appellant,

### Francis G. Slay, et al., Respondents,

v.

### STATE of Missouri, Appellant/Cross–Respondent.

### No. SC 92159.

Supreme Court of Missouri, En Banc.

Nov. 13, 2012.

908

Michael A. Garvin, Patricia A. Hageman, Christine L. Hodzic and Daniel J. Emerson, St. Louis City Counselor's, St. Louis, for Respondents.

Ronald R. Holliger, General Counsel, Emily A. Dodge, Atty. General's Office, Jefferson City, for Appellant/Cross–Respondent.

Michael R. Gibbons, Charles W. Hatfield And Nicholas G. Frey, Stinson Morrison Hecker LLP, Jefferson City, for International Association of Fire Fighters Local 73.

LAURA DENVIR STITH, Judge.

The city of St. Louis ("City") appeals the trial court's holding that the prohibition against special laws contained in article III, section 40 of the Missouri Constitution is not violated by section 320.097, RSMo Supp.2010. That statute exempts certain veteran firefighters who live in areas with unaccredited or provisionally accredited school districts from any local laws requiring them to live in their home district. The State also appeals, alleging the trial

court erred in holding that section 320.097 does violate what the trial court believed was the "broad measure of complete freedom from State legislative control" given to constitutional charter cities by article VI, section 22 of the Missouri Constitution. The State also appeals the trial court's holding that the statute violates the equal protection clauses of the Missouri and United States constitutions because it is not rationally related to any legitimate state purpose.

This Court affirms the holding that section 320.097 is not a special law. The statute's classifications are not close-ended but rather are based on open-ended characteristics under which any city may qualify if it adopts a residency requirement and if its school district lacks full accreditation.

This Court reverses the trial court's holding that section 320.097 impermissibly infringes on the City's authority over its employees as set out in its city charter. While article VI, section 22, often referred to as the "home rule law," gives constitutional charter cities such as St. Louis the right to set its employees' powers, duties and compensation, residency requirements are not a part of an employee's powers, duties or compensation. Section 320.097 addresses only residency requirements for fire departments. Accordingly, section 320.097 does not interfere with the City's charter powers. Neither does it violate equal protection principles, as it is rationally related to the legitimate state purposes of improving children's education and retaining experienced firefighters.

## I. STATEMENT OF FACTS

In 2010, the legislature enacted section 320.097, RSMo.[1] Applicable to all Missouri cities, subsection 2 of that statute provides:

1. The parties refer to section 320.097 as en- acted in Senate Bill 739; because the bill has

No employee of a fire department who has worked for seven years for such department shall, as a condition of employment, be required to reside within a fixed and legally recorded geographical area of the fire department if the only public school district available to the employee within such fire department's geographical area is a public school district that is or has been unaccredited or provisionally accredited in the last five years of such employee's employment. *Id.*[2] If an eligible firefighter chooses to reside outside of the department's boundaries, the firefighter must reside within a one-hour response time. *Id.*

St. Louis is a constitutional charter city. All parties concede that the City's public schools currently are not fully accredited[3] and that article VIII, section 2 of the City's charter requires all its employees to reside in the City beginning no later than 120 days after the date of their employment and throughout their employment thereafter. Section 320.097 applies to the City unless the statute is invalid.

The City, Mayor Francis Slay, a member of the City's civil service commission and a City employee brought a four-count action seeking declaratory and injunctive relief to prevent application of section 320.097 to the city. The thrust of the petition is that the statute attempts to supersede the residency requirement of the City's charter, and that in so doing, the statute attempts to supplant the City's authority and violates Missouri's constitutional provisions discussed above concerning special laws, home rule rights for constitutional charter counties and equal protection of the laws.[4]

The parties filed cross-motions for summary judgment. The trial court granted the State's motion for summary judgment on the City's allegation that section 320.097 is a special law, finding that as the law applies to any city that has a residency requirement and an unaccredited or provisionally accredited school district, it is based on open-ended characteristics and so is a general rather than a special law. The City appeals this ruling.

But the trial court granted the City's motion for summary judgment on its claim that section 320.097 violates article VI, section 22 of the Missouri Constitution, finding that the residency requirement exemption provided for in the statute "cannot be harmonized with the acknowledged constitutional intent to provide charter cites with a broad measure of complete freedom from State legislative control over municipal employment decisions and to reverse a pattern of meddling by the State in municipal employment decisions that are obviously local in nature."

The trial court also found that the acknowledged standard for determining whether a statute bears a rational relationship to a legitimate state purpose provides too low a threshold when reviewing an equal protection claim. Applying an unexplained higher standard, it then held without further explanation that the statute is insufficiently related to the purposes of improving children's education and of en-

---

been codified in section 320.097, the law will be referred to by its statutory citation.

**2.** Charter schools are not considered in determining whether an accredited public school is available because "[n]o charter school shall be deemed a public school for purposes of this section."

**3.** At the time of filing and of oral arguments, St. Louis public schools were unaccredited. Their status changed October 16, 2012, to provisionally accredited.

**4.** Count IV merely requested injunctive relief rather than a separate substantive claim.

couraging firefighters not to change departments just to get into a better school district. The State appeals these rulings.

## II. STANDARD OF REVIEW

The right to summary judgment is solely an issue of law that does not require any deference to the trial court. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Accordingly, an appellate court reviews the grant of summary judgment *de novo*. *Id.* It "will review the record in the light most favorable to the party against whom judgment was entered," according the non-movant "the benefit of all reasonable inferences from the record." *Id.*

## III. SECTION 320.097 IS CONSTITU- TIONAL

### A. Article VI, Section 22 does not Conflict with Section 320.097.

The City argues, and the trial court held, that article VI, section 22 of Missouri's Constitution gives charter cities "a broad measure of complete freedom from State legislative control over municipal employment decisions." The City argues that it used this freedom to enact a provision in its charter requiring all permanent, full-time City employees to become residents of the City within 120 days of employment.[5] The City argues that as its charter makes residency a qualification for permanent employment by the City, the legislature's attempt in section 320.097 to pass a statute exempting certain municipal employees from municipal residency requirements is a violation of the City's constitutional authority under article VI, section 22 of Missouri's Constitution.

The City's argument gives section 22 a far broader reach than its words permit. The home rule law does not state that it provides charter cities with "a broad measure of complete freedom from state legislative control." Neither does it prohibit the legislature from addressing qualifications for municipal employment. It provides simply that:

> No law shall be enacted creating or fixing *the powers, duties or compensation of any municipal office or employment,* for any city framing or adopting its own charter under this or any previous constitution, and all such offices or employments heretofore created shall cease at the end of the terms of any present incumbents.

*Mo. Const. art. VI sec. 22* (emphasis added).

The home rule law is quite straightforward. It gives charter cities authority to set the powers, duties and compensation of their employees. Residency does not constitute, nor is it claimed to constitute, a power or duty of firefighters, nor does it concern their compensation. These are the only matters that section 22 states that charter cities may take solely unto themselves to regulate. And, contrary to the City's additional ar-

5. Article VIII, Sec. 2 of the City charter states:

> In addition to other qualifications required by this charter, except as provided hereinbelow, all officers and employees (in nontemporary, full-time positions) must reside in the city of St. Louis on or before 120 days have elapsed after appointment or, if the officer or employee serves in a working test period as provided by Civil Service Rule, then 120 days after the end of an initial working test period, not to exceed one year, and all employees and officers must maintain residence within the City of St. Louis during the entire tenure of their employment or of their appointment as an officer after said 120–day period and failing or ceasing so to reside, shall forfeit their office or employment.

gument, the statute does not affect the city commission's power or duty to consider and grant exemptions to the City's residency requirement. The commission still may grant such exemptions should it so choose.

The City argues that the case law has expanded the authority granted to cities under article VI, section 22 to include the sole power to set employment qualifications in addition to the authority to set an employee's powers, duties and compensation. This argument also is rejected for a number of reasons.

■ First, it is well-settled that case law cannot expand the constitution; it only can clarify it. *See generally Farmer v. Kinder*, 89 S.W.3d 447, 452 (Mo. banc 2002). Article VI, section 22 does not mention qualifications.

Second, it is not clear that residency fairly can be characterized as an employment qualification or whether it more aptly can be characterized as a condition to employment (or, as here, to continued full-time permanent employment, inasmuch as the charter does not require residency for part-time or temporary employees or for new employees until they have been employed for a certain period). But assuming that residency constitutes an employment qualification,[6] section 22 does not take from the legislature the authority to set out employment qualifications.

Third, the only case cited by the City for the proposition that case law has expanded the meaning of section 22 to include quali-

fications for employment, *State ex rel. St. Louis Fire Fighters Ass'n Local No. 73 v. Stemmler*, 479 S.W.2d 456 (Mo. banc 1972), does not so hold. The City quotes from a portion of that case discussing what powers the people would be *empowered to retain* for themselves through a constitutional provision such as section 22. The case makes clear that, in the absence of a provision giving such authority to the people, the power remains within the authority of the legislature:

> Public offices and positions belong to the people and not to officers upon whom they confer appointive power.... [T]he qualifications, tenure, and compensation thereof must be determined by the people or the people will lose control of their government. This must be done by the representatives the people have authorized to act for them, unless the people themselves have determined these matters by writing them into the Constitution. *If the people have not thus themselves determined them, then under our Constitution and theory of government, these are legislative powers.*

*St. Louis Fire Fighters Ass'n*, 479 S.W.2d. at 460 (emphasis added). In a later part of the decision, this Court specifically notes that section 22 gives to charter cities the authority to regulate the *powers, duties and compensation* of its employees. But the case says nothing about giving the City authority to regulate qualifications for employment, much less residency requirements. *Id.*[7]

---

**6.** "Residency" generally is defined as "a place of residence," and "residence" as the "act of making one's home in a place." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1931 (1961). The definition is not useful in resolving whether residency is an employment qualification as opposed to some other type of employment requirement.

**7.** In *St. Louis Fire Fighters Ass'n*, the City chose to make its firefighters' salaries dependent on the salary given to police employees under state law. Because this was a decision by the City as to salary, it did not constitute an impermissible legislative arrogation of power or an improper delegation of city authority to set compensation to the legislature. The legislature, this Court stated, "has not

Similarly, here the legislature has not sought to require that firemen be hired or to dictate their duties or to fix their compensation or those of the city commissioners. It has sought only to exempt certain groups of firefighters from the reach of any residency requirement that might be enacted in any geographic area where a fully accredited school district otherwise would not be available to the firefighters. This is not barred by article VI, section 22.

This holding is in accord with the numerous other Missouri cases that have rejected similar arguments from the City that the legislature may not enact any law affecting City employees. For example, in affirming the State's authority to prohibit employment discrimination in *City of St. Louis v. Mo. Comm. on Human Rights,* 517 S.W.2d 65 (Mo.1974), this Court stated, " 'Interference' in the performance of the duties of the city officers, for the purpose of securing compliance with state policy, is not 'fixing the powers (or) duties' of a municipal office, which is what the constitution prohibits." *Id.* at 70; *see also City of St. Louis v. Grimes,* 630 S.W.2d 82, 84 (Mo. banc 1982). Similarly, *City of Springfield v. Goff,* 918 S.W.2d 786 (Mo. banc 1996), reaffirmed that the legislature may enact laws that affect city employees, so long as those laws do not fix the powers, duties or compensation of city employees, stating:

> Section 22 is limited to prohibiting the General Assembly from enacting state laws prescribing the individual offices of a charter city and the duties and compensation of the officers holding those offices. Section 22 applies only to individual offices. In other words, the General Assembly may not tell the officers of a charter city what they must do; it may, however, limit the powers a charter city may exercise through its officers.

*Id.* at 789.[8]

Because regulating residency is not fixing the powers, duties or compensation of firefighters, article VI, section 22 does not prohibit the legislature from enacting laws that impact the residency requirements of municipal employees in charter cities. The trial court erred in holding to the contrary.

### B. Section 320.097 does not Violate Equal Protection Principles.

The City also argues, and the trial court found, that section 320.097 violates the equal protection clauses of the Missouri and United States constitutions. The parties agree that because this case does not involve a suspect class nor is it otherwise subject to strict scrutiny, the propriety of the legislation under equal protection principles is tested under the rational basis test. The trial court determined that section 320.097 violates equal protection principles only by rejecting the many cases holding that under the rational basis test, a "classification is constitutional if any state of facts can be reasonably conceived that would justify it." *Alderson v. State,* 273 S.W.3d 533, 537 (Mo. banc 2009). The trial court concluded that this standard is so easy for the State to meet that it renders the rational basis test "meaningless." It then held the State to a higher but unspecified standard and held section

---

sought to require that firemen be hired, or to provide their duties, or fix their compensation. The general assembly has done nothing to violate art. VI, s[ec] 22." *Id.* at 461.

8. *See also Cohen v. Poelker,* 520 S.W.2d 50 (Mo. banc 1975) (holding that chapter 610, RSMo, which requires public governmental bodies to open their meetings to the public when conducting the people's business, does not violate the home rule law because it does not regulate powers, duties, or compensation).

320.097 unconstitutional under this undefined standard. This was error.

■ "The legislature is afforded broad discretion is attacking societal problems." *Treadway v. State*, 988 S.W.2d 508, 511 (Mo. banc 1999). This means a law that does not impinge on any suspect classification or constitutional right will be upheld if it is rationally related to a legitimate state interest. *See, e.g., Mo. Prosecuting Attorneys and Circuit Attorneys Ret. Sys. v. Pemiscot Cnty.*, 256 S.W.3d 98, 102 (Mo. banc 2008); *Kohring v. Snodgrass*, 999 S.W.2d 228, 233 (Mo. banc 1999); *Batek v. Curators of University of Missouri*, 920 S.W.2d 895, 898 (Mo. banc 1996). The rational basis standard prevents the courts from over-writing the legislature's judgment with its own regarding "the wisdom, social desirability or economic policy underlying a statute." *Mo. Prosecuting Attorneys*, 256 S.W.3d at 102. This is especially important because a rational legislature can base its classifications on "any number of considerations." *Batek*, 920 S.W.2d at 899.

■ For these reasons, "[t]he challenger bears the burden to show that the law is wholly irrational." *Treadway*, 988 S.W.2d at 511. The City failed to meet this burden. The law permits at least some children who otherwise would not reside in an accredited school district to live in such a district. It is reasonably conceivable that permitting children of firefighters to live in accredited school districts and attend accredited schools will further the State's interest in improving the quality of public education available to these children. It is as equally plausible that allowing firefighters to relocate to an accredited school district after seven years of service may further fire protection services by encouraging firefighters to remain at their current jobs rather than leaving their departments entirely to relocate to a fully accredited school district to better provide for their children's education.

While the City says that there is no proof that the law will have this affect in its particular case, because it has not had trouble retaining firefighters to date, and while the City offers reasons why allowing firefighters to relocate up to one hour outside the city could have deleterious affects, these are the kind of considerations that the legislature is best equipped to weigh and balance in deciding what laws to enact for the state as a whole. As discussed below, section 320.097 applies to all firefighters who are subject to residency requirements and are located in districts that do not have fully accredited schools. The statute is constitutional if the legislature had a rational basis for enacting the legislation, regardless of whether the circumstances that it was attempting to address are present in every case or for every firefighter who may be subject to the legislation.

Here, because section 320.097's classification bears a rational relationship to the State's proffered interests, its classification cannot be deemed wholly irrational. Accordingly, the trial court erred in holding that the statute violated the United States or Missouri equal protection clauses.

### C. Section 320.097 is not Special Legislation

■ The City asserts in its appeal that the trial court erred in failing to strike down section 320.097 as a facially special law that contravenes article III, section 40 of Missouri's constitution. Section 40 sets out 29 separate subject matters about which the legislature may not pass local or special laws and then provides a catch-all provision in subdivision (30) prohibiting the passage of local or special laws as to other matters to which a general law may be made applicable. Here, the City as-

serts that section 320.097 contravenes subdivisions 21, 28 and 30 of section 40, which state in relevant part:

> 40. The general assembly shall not pass any local or special law:
>
> ....
>
> (21) creating offices, prescribing the powers and duties of officers in, or regulating the affairs of counties, cities, townships, election or school districts;
>
> ....
>
> (28) granting to any corporation, association or individual any special or exclusive right, privilege or immunity, ...;
>
> ....
>
> (30) where a general law can be made applicable and whether a general law could have been made applicable is a judicial question to be judicially determined without regard to any legislative assertion on that subject.

*Art. III, secs. 40(21), 40(28), 40(30).*

The parties agree that the purpose of article III, section 40 is to prevent the legislature from passing special laws in regard to the matters set out in that section but disagree as to whether section 320.097 is a special law.

■■■■ The test for whether a law constitutes a special law was addressed by this Court in depth in *Jefferson Cnty. Fire Prot. Dists. Ass'n v. Blunt*, 205 S.W.3d 866 (Mo. banc 2006). As there noted, the test usually applied to determine whether a statute is a special law is whether the reach of the statute is based on open-ended or closed-ended characteristics:

A law is facially special if it is based on close-ended characteristics, such as historical facts, geography or constitutional status. *Tillis v. City of Branson*, 945 S.W.2d 447, 449 (Mo. banc 1997). A facially special law is presumed to be unconstitutional. *O'Reilly v. City of Hazelwood*, 850 S.W.2d 96, 99 (Mo. banc 1993).... A law based on open-ended characteristics is not facially special and is presumed to be constitutional. *O'Reilly*, 850 S.W.2d at 99....

*Id.* at 870.[9]

■■■■ In *Jefferson County*, the issue was whether a statute that applied only to counties that had a population within a certain very narrow range was based on open-ended characteristics. This Court noted that classifications based on population normally "are open-ended in that others may fall into the classification." *Id.* This is true even if, at the time of the suit, only one or a few counties in fact are affected by the legislation. *Id. Accord, Treadway v. State*, 988 S.W.2d at 511; *Manchester Fire Prot. Dist. v. St. Louis Cnty. Bd. of Election Com'rs*, 555 S.W.2d 297, 298 (Mo. banc 1977); *Collector of Revenue of City of St. Louis v. Parcels of Land Encumbered with Delinquent Tax Liens Serial Numbers 1–047 and 1–048*, 517 S.W.2d 49, 53 (Mo. banc 1974).

On the other hand, if the classification is drawn so narrowly that "the only apparent reason for the narrow range is to target a particular political subdivision and to exclude all others" even though there are others that theoretically could be similarly situated, then "the law is no longer pre-

---

9. In situations in which the question of whether a statute is open or close-ended simply does not apply, such as the law prohibiting tampering with judicial officers, then this Court applies a more generalized version of the test, stating that a "special law is a law that includes less than all who are similarly situated. A law is not special if it applies to all of a given class alike and the classification is made on a reasonable basis." *State v. Cella*, 32 S.W.3d 114, 117–18 (Mo. banc 2000).

sumed to be general, but is presumed to be a special law." *Jefferson Cnty.*, 205 S.W.3d at 871.

Here, the City argues that section 320.097 is a special law because only the city of St. Louis both has a residency requirement for its firefighters and has a school district that is not fully accredited. But the test for whether a statute is special is not whether another falls within its parameters at a particular time but whether "others may fall into the classification." *Jefferson Cnty*, 205 S.W.3d at 870.

 Section 320.097 applies to any city with a fire department with employees who have worked for that department for seven years if the only public school district in their geographic area of employment has been unaccredited or provisionally accredited in the last five years. Any fire department could adopt a residency requirement, and any school district runs the risk of becoming unaccredited or provisionally accredited. Indeed, as the State notes, it is a matter of public record that numerous Missouri public school districts are not now or have not always been fully accredited during the pendency of this case.[10] Because "others may fall into the classification," the law is not special legislation.

 Whether a law is presumed to be special or general is of importance because it determines the standard to be used in judging its constitutional validity. If a statute is held to be a special law, then "[t]he party defending the facially special statute must demonstrate a 'substantial justification' for the special treatment." *Id.* at 870, quoting *Harris v. Mo. Gaming Com'n*, 869 S.W.2d 58, 65 (Mo. banc 1994). But where, as here, the statute is not found to be a special law, then the rational basis test applies, under which the burden "is on the party challenging the constitutionality of the statute to show that the statutory classification is arbitrary and without a rational relationship to a legislative purpose." *Jefferson Cnty.*, 205 S.W.3d at 870.

Here, for the reasons noted earlier in discussing the City's equal protection arguments, this Court finds that section 320.097 is rationally related to legitimate state purposes. Accordingly, the trial court did not err in holding that section 320.097 does not violate article III, section 40.[11]

10. Missouri maintains a public list of those Missouri public school districts that are unaccredited or provisionally accredited at a particular time. *See, e.g., Missouri Department of Elementary and Secondary Education, Missouri School Directory Online,* http://dese.mo.gov/directory/index.html.

While the City argues that it is inappropriate to look to public records to determine whether other districts are unaccredited or provisionally accredited, it is well within this Court's authority to consult this type of public record. *See, e.g., State ex rel. SLAH, LLC v. City of Woodson Terrace,* 378 S.W.3d 357, 359 at n. 2 (Mo. banc 2012) (relying on the federal census bureau's profile of general population and housing characteristics to support a statistic); *State ex rel. Mo. Pub. Defender Com'n*

*v. Pratte,* 298 S.W.3d 870, 873 n. 1 (Mo. banc 2009) ("The historical and factual background information in this opinion is before the Court through the record in these writ proceedings, *as supplemented by matters of public record* ") (emphasis added); *State ex rel. Simmons v. Roper,* 112 S.W.3d 397, 399 n. 2 (Mo. banc 2003) (relying on the office of juvenile justice and delinquency prevention's statistical briefing to support a point).

11. For reasons not explained, the trial court affirmed the validity of section 320.097 under article VI, section 22, and, therefore, must have found it had a rational basis, despite finding it had no rational basis and so invalidating it under the Missouri Constitution's equal protection clause.

## IV. CONCLUSION

This Court affirms the trial court's holding that section 320.097 is not a special law in violation of article III, section 40 of the Missouri Constitution. This Court reverses the trial court's holding that section 320.097 violates article VI, section 22 of the state constitution because it interferes with the City's right to set its employees' and officers' powers, duties and compensation. The Court further reverses the trial court's holding that section 320.097 violates the equal protection clauses of the Missouri and United States constitutions. Affirmed in part and reversed in part.

TEITELMAN, C.J., RUSSELL, BRECKENRIDGE, FISCHER and DRAPER, JJ., concur.