**Robin J. WILSON, Appellant–Respondent,**

v.

**IMAGE FLOORING, LLC, and Brandon Rapp, Respondents–Appellants.**

**Nos. WD 75141, WD 75142.**

Missouri Court of Appeals, Western District.

March 19, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 30, 2013.

Application for Transfer Denied June 25, 2013.

---

Scott E. Nutter and Douglas R. Bradley, Kansas City, MO, Michael W. Blanton, Denver, CO, for Appellant–Respondent.

Lee M. Baty, Theresa A. Otto, and Elizabeth A. Gillespie, Kansas City, MO, for Respondents–Appellants.

Before Division Two: KAREN KING MITCHELL, Presiding Judge, and THOMAS H. NEWTON and LISA WHITE HARDWICK, Judges.

KAREN KING MITCHELL, Presiding Judge.

This is a negligence case arising from an accident wherein a box truck, owned by Image Flooring and driven by Brandon Rapp, rolled away from a loading dock, resulting in Robin Wilson falling to the concrete surface below and breaking her right leg. Wilson filed suit in Missouri against Image Flooring and Rapp, alleging that Rapp was negligent in securing the vehicle before loading, that Image Flooring (as Rapp's employer) was vicariously liable for Rapp's conduct, and that Image Flooring was also directly liable for negligent hiring, negligent training, negligent supervision, and negligent entrustment. Before trial, Image Flooring and Rapp moved for partial summary judgment on Wilson's direct liability negligence claims against Image Flooring. The trial court granted the motion, and the case proceeded to jury trial on the general negligence and vicarious liability claims, resulting in a verdict in favor of Wilson.

Wilson appeals the grant of partial summary judgment, arguing that the trial court applied an incorrect legal standard in granting the motion. Image Flooring cross-appeals from the jury verdict, arguing that the trial court erred in applying Missouri, rather than Kansas, law regarding comparative fault and damage caps and in overruling Image Flooring's motion for judgment notwithstanding the verdict on the ground that Wilson's conduct constituted a superseding cause for her injuries, thereby relieving Image Flooring and Brandon Rapp of any liability. We affirm in part, reverse in part, and remand for further proceedings.

## Factual Background

Brandon Rapp, a Missouri resident, began working for Image Flooring, a Missouri Corporation doing business in both Missouri and Kansas, in April 2008. He started as an apprentice floor layer, but two or three months later, he moved to the warehouse and began driving a box truck on deliveries. Robin Wilson, also a Missouri resident, worked as a production worker for ISC Surfaces in Kansas City, Kansas, and had been doing so since about 2002.

On August 22, 2008, Rapp drove an Image Flooring box truck to ISC Surfaces in Kansas City, Kansas, to pick up flooring supplies. When he arrived at ISC Surfaces, Rapp backed the box truck up to a designated dock, and the dock plate from the loading bay was then extended onto the truck to bridge the gap between the truck and the loading bay.[1] Neither Rapp nor anyone else present that day could recall if the truck was placed in "park," if the parking brake was engaged, or if the wheels were chocked,[2] so as to keep the truck in a stationary position during the loading process.

ISC Surfaces employee, Luis Perez, loaded a ten-foot-long, 2,282–pound skid into the back of the Image Flooring truck, using a forklift with fork extenders. When Perez attempted to back the forklift up, the fork extenders became caught on the pallet.[3] At that point, Wilson came over to assist. Wilson wiggled the extenders free, and Perez then drove the forks back into

the extenders to remove them, but the extenders got stuck again, and when he pulled the forklift back, the load came back with it about three-and-a-half feet off the truck.

After the extenders were removed, Wilson took a four-by-four piece of scrap wood (consisting of two two-by-fours nailed together) and placed it against the load between the load and the forks so that the forklift could push the load back into the truck. The four-by-four rolled away on the first attempt, so Wilson and another ISC Surfaces employee stood on either side of the forklift on the dock plate, and each of them used one foot to stabilize the four-by-four and keep it from rolling. When Perez drove the forklift into the load this time, the truck rolled forward somewhere between eighteen inches and three feet, causing the dock plate to collapse, which resulted in Wilson falling to the concrete surface below, breaking her right femur.

Wilson sued Rapp and Image Flooring, asserting a claim of negligence against Rapp for failing to properly secure the truck, a claim of vicarious liability against Image Flooring for Rapp's negligence, and separate claims against Image Flooring for negligently hiring, training, and supervising Rapp, as well as negligently entrusting Rapp with the box truck.[4] In her petition, Wilson additionally alleged that "[t]he conduct of the defendants, as described herein, was willful, wanton, grossly negligent, and/or reckless and shows a complete in-

---

1. The purpose of the dock plate is to allow workers and forklift drivers to load and unload cargo between the warehouse and the truck. The dock plate, itself, is attached to the bay and hinged for ease of raising and lowering. When engaged, the only thing holding a dock plate in place is the rear of the truck being loaded or unloaded.

2. Chocks are wedges made of sturdy material that help prevent accidental movement when placed behind a truck's wheels.

3. But for the extenders being stuck, the truck was otherwise loaded and ready to depart.

4. Wilson's husband, James Wilson, was also a plaintiff, but he voluntarily dismissed his claims.

difference to and/or conscious disregard for the safety of plaintiffs and others similarly situated.... Based on their willful, wanton, grossly negligent, and/or reckless conduct, punitive damages are appropriate to punish and deter the defendant and others for like conduct."

Image Flooring and Rapp filed a motion to dismiss for forum non conveniens, or, in the alternative, to apply Kansas law, "including but not limited to application of comparative fault law and statutory caps on damages, and any other substantive issues that may arise at pre-trial, trial and thereafter." The crux of the motion was that Kansas—the site of the conduct, injury, and relationship of the parties—had more significant contacts with the case than did Missouri—the domicile of all parties involved. The trial court denied both the motion to dismiss and the request to apply Kansas substantive law.

Image Flooring and Rapp thereafter moved for partial summary judgment on the negligent hiring, training, supervision, and entrustment claims, arguing, in part, that those claims were barred as a matter of law by the Missouri Supreme Court's ruling in *McHaffie v. Bunch*, 891 S.W.2d 822 (Mo. banc 1995).[5]

Wilson filed suggestions in opposition to the motion for partial summary judgment, arguing that the general rule in *McHaffie*, which would bar the separate negligence claims against Image Flooring, was subject to a punitive damages exception; in other words, when a plaintiff seeks punitive damages based upon the separate negligence claims against the employer, those claims are not barred.

The trial court granted the motion for partial summary judgment, stating:

After reviewing the pleadings and hearing argument on this issue, this Court fails to see factual evidence showing that Defendant exhibited any conscious disregard for the safety of others, that Defendants' conduct was outrageous or that such conduct was the result of an evil motive or reckless indifference.... As such, a "punitive damages exception" to the majority rule set forth in *McHaffie*, if any, would not be triggered under the facts of this case.

The remaining claims for negligence and vicarious liability went to a jury trial. The jury returned a verdict finding Wilson to be 25% at fault and Image Flooring and Rapp to be 75% at fault, and assessing a total amount of $1,565,625 in damages. Wilson appeals the entry of partial summary judgment. Image Flooring and Rapp cross-appeal the denial of their request to apply Kansas substantive law and the denial of their motion for judgment notwithstanding the verdict on the ground that Wilson's actions constituted a superseding cause of her injuries.

### Standard of Review

"The right to summary judgment is solely an issue of law that does not require any deference to the trial court." *City of St. Louis v. State*, 382 S.W.3d 905, 910 (Mo. banc 2012). "Accordingly, an appellate court reviews the grant of summary judgment *de novo*." *Id.* "It 'will review the record in the light most favorable to the party against whom judgment was entered,' according the non-movant 'the benefit of all reasonable inferences from the record.'" *Id.* (quoting *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993)).

---

**5.** Image Flooring and Rapp also argued, in the alternative, that the claims for negligent hiring and negligent entrustment failed as a matter of law insofar as there was a disconnect between Rapp's alleged dangerous propensities and the type of harm that resulted.

The question of which State's law to apply is likewise a question of law, subject to de novo review. *See State ex rel. Broglin v. Nangle,* 510 S.W.2d 699, 704 (Mo. banc 1974) (indicating that choice of law is not discretionary; rather, it is a legal question); *Griggs v. Riley,* 489 S.W.2d 469, 471 (Mo.App.1972) (characterizing a conflict of law issue as a "serious question of law"); *State ex rel. Koster v. Cain,* 383 S.W.3d 105, 116 (Mo.App. W.D.2012) ("We review questions of law *de novo.*").

" 'When the ... denial of a ... JNOV is based upon a matter of law ... we review the trial court's decision *de novo.*' " *Bailey v. Hawthorn Bank,* 382 S.W.3d 84, 92 (Mo. App. W.D.2012) (quoting *Trinity Lutheran Church v. Lipps,* 68 S.W.3d 552, 557 (Mo. App. E.D.2001)). Although the existence of proximate cause is typically put to a jury for determination, the question of whether there exists "an intervening cause [that] eclipses the role the defendant's conduct played in the plaintiff's injury" is a matter of law for the court. *Tompkins v. Cervantes,* 917 S.W.2d 186, 190 (Mo.App. E.D.1996).

### Analysis

Wilson raises three claims on appeal. First, she argues that the court's grant of partial summary judgment was improper insofar as the court's decision was based upon insufficient evidence of punitive damages. Second, she argues that the question of sufficiency of the evidence to support punitive damages involved disputed material facts that needed to be resolved by a jury. Finally, she argues that, contrary to the court's conclusion, the evidence supporting her punitive damages claim was sufficient.

Image Flooring and Rapp raise two claims on cross-appeal. First, they argue that the court erred in refusing to apply Kansas law in that Kansas was the site of both the injury and the conduct giving rise to the injury, and it was the location of the relationship between the parties; thus, they argue, Kansas had the most significant contacts with the case. And second, they argue that the court erred in denying their motion for judgment notwithstanding the verdict on the ground that Wilson's failure to manually remove the forklift extenders constituted a superseding cause for her injuries.

### I. Direct Negligence Claims Against Image Flooring

Wilson argues that the trial court erred in granting partial summary judgment in favor of Image Flooring and Rapp on her direct negligence claims against Image Flooring (negligent hiring, training, supervision, and entrustment). She claims that the trial court applied an incorrect standard when it concluded that there were not sufficient facts to support punitive damages in that there was never a motion for summary judgment filed regarding the sufficiency of facts supporting the punitive damages claim; thus, whether there were sufficient facts to trigger a " 'punitive damages' exception to the majority rule set forth in *McHaffie,*" the basis for the trial court's entry of partial summary judgment in this case, was not an issue before the court. She further argues that there were genuine issues of material fact related to punitive damages that would have precluded entry of partial summary judgment on that ground. Her final argument is that there were sufficient facts to support a claim for punitive damages.

### A. The rule in *McHaffie* is subject to a punitive damages exception.

■ Our analysis of this issue necessarily begins with the Missouri Supreme Court's decision in *McHaffie v. Bunch,* 891 S.W.2d 822 (Mo. banc 1995), which formed the basis for the original motion for partial summary judgment in this case.

In *McHaffie*, the plaintiff sued the driver of a truck, as well as his employers, for negligence based upon injuries she suffered as the result of a collision. 891 S.W.2d at 824. The plaintiff raised two theories of liability against the employer: vicarious liability based upon the doctrine of respondeat superior and direct liability based upon claims of negligent hiring and supervision of the driver. *Id.* Following a jury verdict in favor of the plaintiff, the defendants appealed, arguing that the plaintiff should not have been allowed to pursue claims against the employers under theories of both vicarious and direct liability. *Id.* at 825.

The Missouri Supreme Court agreed and adopted the majority view "that once an employer has admitted *respondeat superior* liability for a driver's negligence, it is improper to allow a plaintiff to proceed against the employer on any other theory of imputed liability." *Id.* at 826. The Court reasoned that, in situations where the direct negligence claims against the employer are necessarily based upon a finding that the employee's conduct was negligent and the employer has already admitted vicarious liability, "the evidence laboriously submitted to establish other theories serves no real purpose." *Id.* "The energy and time of courts and litigants is unnecessarily expended." *Id.* The Court further reasoned that allowing such claims to proceed would needlessly allow into the record "potentially inflammatory evidence [that was] ... irrelevant to any contested issue in the case." *Id.* The Court qualified its holding, however, noting that

> it may be possible that an employer or entrustor may be held liable on a theory of negligence that does not derive from and is not dependent on the negligence of an entrustee or employee.... [I]t is also possible that an employer or an entrustor may be liable for punitive

damages [that] would not be assessed against the employee/entrustee. *See Clooney v. Geeting*, 352 So.2d [1216,] 1220 [ (Fla.Dist.Ct.App.1977) ]. Finally, it is conceivable that in a contribution action between an employer and employee, the relative fault of those two parties may be relevant. However, none of those circumstances exist here. Those issues await another day.

*Id.*

Image Flooring and Rapp's motion for partial summary judgment argued that, based upon the rule in *McHaffie*, Wilson's direct negligence claims against Image Flooring were improper and should not be allowed. Wilson countered, however, that the Court in *McHaffie* contemplated a "punitive damages exception" to the general rule barring direct negligence claims against an employer who had already admitted vicarious liability; and because Wilson alleged punitive damages, she argued that her claims fell within the exception and were not barred. Image Flooring and Rapp disputed the existence of a punitive damages exception, pointing out that the Court's discussion of punitive damages was merely dicta and that the Court expressly reserved deciding that issue for "another day."

While many federal courts have addressed the question of whether there exists a punitive damages exception to the general rule outlined in *McHaffie* (and have largely split on the resolution), it appears that no Missouri court has yet addressed this issue. *See Kwiatkowski v. Teton Transp., Inc.*, No. 11–1302–CV–W–ODS, 2012 WL 1413154, at *3–4 (W.D.Mo. Apr. 23, 2012) (recognizing a punitive damages exception to *McHaffie* after discussing the split in federal authority and noting the absence of any Missouri decisions on the issue).

Although the Court's mention of punitive damages as a possible exception to the

general rule announced in *McHaffie* was dicta, we find that dicta persuasive and believe that, if faced with the issue now, our Supreme Court would determine that such an exception exists.

The rationale for the Court's holding in *McHaffie* was that, where vicarious liability was admitted and none of the direct liability theories could prevail in the absence of proof of the employee's negligence, the employer's liability was necessarily fixed by the negligence of the employee. *McHaffie*, 891 S.W.2d at 826. Thus, any additional evidence supporting direct liability claims could serve only to waste time and possibly prejudice the defendants. *Id.*

The same cannot be said, however, when a claim for punitive damages based upon the direct liability theories is raised. If an employer's hiring, training, supervision, or entrustment practices can be characterized as demonstrating complete indifference or a conscious disregard for the safety of others, then the plaintiff would be required to present additional evidence, above and beyond demonstrating the employee's negligence, to support a claim for punitive damages. Unlike in the *McHaffie* scenario, this evidence would have a relevant, non-prejudicial purpose. And because the primary concern in *McHaffie* was the introduction of extraneous, potentially prejudicial evidence, we believe that the rule announced in *McHaffie* does not apply where punitive damages are claimed against the employer, thus making the additional evidence both relevant and material.

**B. To invoke the punitive damages exception, a plaintiff must specifically plead facts supporting a claim for punitive damages.**

■ In light of our determination that a punitive damages exception to the rule in *McHaffie* exists, the question arises as to how a party avails herself of this exception. We hold that it is not enough to simply make a demand for punitive damages in the petition; a party must also allege sufficient facts to support the claim for punitive damages.

■ When making a claim for punitive damages generally, a party is required to plead facts supporting that claim; it is not enough to simply request punitive damages. "While the request for punitive damages need not be pleaded in a separate count, 'it must nevertheless appear from the complaint, either by direct averment or from necessary inference, that the act occasioning the damages was done maliciously or was the result of the willful misconduct of the defendant....'" *Dibrill v. Normandy Assocs., Inc.*, 383 S.W.3d 77, 91 (Mo.App. E.D.2012) (quoting *City of Greenwood v. Martin Marietta Materials, Inc.*, 299 S.W.3d 606, 627 (Mo.App. W.D. 2009)). "Accordingly, to state a claim for punitive damages ..., a plaintiff's petition must allege *facts* indicating the defendant willfully, wantonly, or maliciously injured the plaintiff by its tortious act." *Id.* (emphasis added).

We see no reason that this rule should differ in the context of a punitive damages exception to the general rule in *McHaffie*. In fact, the need for a plaintiff to allege sufficient facts to support a punitive damages claim is arguably greater when the reason for doing so is to meet the exception and allow the plaintiff to proceed on claims that would otherwise be barred. "Just as it is dangerous to have a hard and fast rule that all direct negligence claims should be dismissed in the face of an admission of vicarious liability, it is equally dangerous to adhere to an inflexible rule that when a plaintiff asserts a claim for

punitive damages, the direct negligence claims must necessarily survive summary dismissal." Richard A. Mincer, *The Viability of Direct Negligence Claims Against Motor Carriers in the Face of an Admission of Respondeat Superior*, 10 Wyo. L. Rev. 229, 263 (2010).[6] Thus, to invoke the punitive damages exception to the rule in *McHaffie*, a plaintiff must plead sufficient facts to support a claim for punitive damages.

Here, although we question whether Wilson's petition sufficiently pled facts to support her claim for punitive damages, neither Image Flooring nor Rapp challenged the sufficiency of Wilson's allegations below through either a motion to dismiss or a motion for summary judgment on the punitive damages claim, which brings us to Wilson's claim on appeal that the trial court granted summary judgment based upon an improper consideration.

## C. The trial court's judgment erroneously relied on a claim not presented to it.

■ Wilson complains that the trial court erred in evaluating the sufficiency of facts supporting her allegation for punitive damages insofar as neither defendant had moved for summary judgment on the factual sufficiency of the punitive damages claim; thus, she argues, the trial court

erred in granting partial summary judgment on this basis. We agree with Wilson that the defendants did not move for summary judgment based on an allegation that the uncontroverted evidence was insufficient as a matter of law to support a claim of punitive damages; rather, they rested solely on their argument that there was no punitive damages exception under *McHaffie*.[7]

Image Flooring and Rapp contend that, contrary to Wilson's assertion, the trial court did not grant summary judgment based on a finding that the facts do not support a claim for punitive damages, but instead simply ruled in their favor that there was no punitive damages exception to the rule in *McHaffie*. We disagree. Although the court's judgment questioned the existence of a punitive damages exception to *McHaffie*, its decision ultimately rested on the notion that, under the facts of this case, such an exception would not apply *because the facts did not support a claim of punitive damages*. Thus, the basis for the trial court's decision involved an evaluation of the facts supporting Wilson's claim for punitive damages. Because this was not a claim presented to it, the court erred in relying on this theory in granting partial summary judgment.

■ "When ruling on a motion for summary judgment, a trial court is limited to

---

**6.** In *Clooney v. Geeting*, 352 So.2d 1216, 1219 (Fla.Dist.Ct.App.1977), the case cited by the Missouri Supreme Court in its discussion of a possible punitive damages exception to the rule in *McHaffie*, the court upheld the trial court's dismissal of the plaintiff's direct liability negligence theories against the employer after determining that plaintiff's "allegations [were] insufficient to show the necessary malice or the wanton, willful, or outrageous conduct required to support a claim for punitive damages." The court held: "There being an insufficient pleading as a predicate for punitive damages, it follows that the trial court did not err in striking Clooney's Count II through V alleging negligent hiring, employment, and

entrustment by Anderson Mfg." *Id.* at 1219–20.

**7.** Image Flooring and Rapp's motion on the basis of *McHaffie* is more properly considered as a motion to dismiss, as it involves a purely legal issue without any necessity for the court to examine any evidence regarding the underlying facts. A statement of uncontroverted facts was attached to the motion, apparently because two fact-bound bases for summary judgment were asserted in addition to the argument that certain claims made against Image Flooring were barred by *McHaffie*.

reviewing what is contained in the motions for summary judgment and the responses thereto." *Risher v. Farmers Ins. Co.*, 200 S.W.3d 84, 87 (Mo.App. E.D.2006).[8] Here, there was no claim raised in the summary judgment pleadings regarding the sufficiency of the factual allegations supporting Wilson's claim for punitive damages.[9] Thus, the basis for the trial court's judgment—that there were insufficient facts to support punitive damages—was a claim not properly presented for determination. Consequently, we reverse the trial court's entry of partial summary judgment on the direct liability claims.

On remand, if the defendants believe that either the uncontroverted evidence or the evidence viewed in the light most favorable to Wilson, is insufficient as a matter of law to support the punitive damages claim, the trial court is free to grant them leave to file a motion to dismiss for failure to state a claim or a motion for summary judgment on the punitive damages claim. And, at that point, the issue will be properly before the trial court for determination.

The entry of partial summary judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

## II. Conflict of Laws

■ Image Flooring and Rapp's first claim on cross-appeal is that the trial court erred in refusing to apply Kansas substantive law in that Kansas had the most significant contacts with the case, and, thus, its law should have controlled. We disagree.

■ In deciding which state's law to apply in a conflict-of-law issue arising in a tort case, "[a] forum state will choose the applicable law according to its own conflict of law principles." *Livingston v. Baxter Health Care Corp.*, 313 S.W.3d 717, 721 (Mo.App. W.D.2010). Missouri follows the "most significant relationship" approach laid out in section 145 (and considered in light of the principles articulated in section 6) of the Restatement (Second) of Conflict of Laws. *Id.; Kennedy v. Dixon*, 439 S.W.2d 173, 184 (Mo. banc 1969); *Griggs*, 489 S.W.2d at 472–73.

Section 145 indicates that "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(1) (1971). The Restatement then identifies the following "[c]ontacts to be taken into account":

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

---

8. *But see Cnty. Asphalt Paving, Co., Inc. v. Mosley Constr., Inc.*, 239 S.W.3d 704, 709 (Mo.App. E.D.2007) (finding that the appellate court, pursuant to de novo review, could consider allegations pled in a pending motion to dismiss, but not reiterated in the motion for summary judgment, when determining whether the trial court erred in granting summary judgment, as the appellate court was allowed to consider all issues then before the trial court).

9. We recognize that Wilson, in her sur-reply, argued (apparently in response to an inter-vening motion in limine) that she had sufficient factual support for her punitive damages claim, and that, according to *Risher*, the court could have considered this. But we are concerned that allowing the court to enter summary judgment against Wilson based upon the factual allegations of her sur-reply, without any further argument, motion, or presentation of uncontroverted facts from the defendants, would result in shifting the burden of proof from Image Flooring and Rapp—the parties seeking summary judgment—to Wilson, the non-moving party.

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

*Id.* § 145(2).

Section 146 deals specifically with personal injury actions, and it provides:

**In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to *the particular issue,* some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.**

(Emphasis added.)

Section 6 identifies the following principles to be considered in guiding the decision of which state's law to apply:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

The Restatement approach, in personal injury actions, "essentially establishes a presumption that the state with the most significant relationship is the state where the injury occurred, absent an overriding interest of another state based on the factors articulated in section 6." *Dorman v. Emerson Elec. Co.,* 23 F.3d 1354, 1358 (8th Cir.1994).

Before we can determine which state has the most significant contacts, we must discern the issues giving rise to the conflict since "different issues in a single case may be decided according to the laws of different states." *Goede v. Aerojet Gen. Corp.,* 143 S.W.3d 14, 25 (Mo.App. E.D.2004), *abrogated on other grounds by Sanders v. Ahmed,* 364 S.W.3d 195, 207 (Mo. banc 2012).

As noted in many prior cases, Missouri and Kansas have conflicting approaches to comparative fault. Missouri is a pure comparative fault state, wherein a plaintiff can recover damages for a defendant's negligent conduct, despite a plaintiff's own negligence, even if the plaintiff's fault exceeded that of the defendant. *Gustafson v. Benda,* 661 S.W.2d 11, 15–16 (Mo. banc 1983). Kansas, on the other hand, is a modified comparative fault state, wherein a plaintiff can recover damages for a defendant's negligent conduct, despite the plaintiff's own negligent conduct, so long as the plaintiff's negligence did not equal or exceed that of the defendant.[10] KAN. STAT. ANN. § 60–258a (2010).

---

**10.** In various cases, Kansas's modified comparative fault law has been described as barring a plaintiff's recovery if the plaintiff was 50% or more at fault. *See, e.g., Wise v. Pottorff,* 987 S.W.2d 407, 410 (Mo.App. W.D.

1999). This, however, is an inaccurate description of Kansas's law. Although a plaintiff is barred from recovery if found to be equal to or at greater fault than the defendant, Kansas allows a jury to attribute fault to

Kansas further limits a plaintiff's recovery through the imposition of statutory caps on non-economic damages. KAN. STAT. ANN. § 60–19a01(b) (limiting damage recovery for pain and suffering to a total of $250,000). Missouri has no corresponding limitation in personal injury actions.

With the above-identified conflicts in mind, we now must determine which state had the most significant contacts in accordance with the principles enunciated in sections 6, 145, and 146 of the Restatement. Here, Kansas was the location of not only the injury but also the conduct giving rise to the injury, as well as the relationship of the parties. Missouri, however, is the domicile of both Wilson and Rapp, and it is the state in which Image Flooring is incorporated. Image Flooring, although incorporated in Missouri, conducts business in both Missouri and Kansas. Based on these factors, it appears that both Missouri and Kansas have significant contacts with the case. Thus, according to section 146, the law of the place of injury (here, Kansas) applies unless, in light of the factors identified in section 6, Missouri has a greater interest in applying its law.

We turn now to the factors in section 6. Generally, the only factors that are relevant in a tort action are those identified in subsections (b) and (c), involving the relevant policies and interests of both the forum state and the foreign jurisdiction as to the issues in conflict. *Griggs,* 489 S.W.2d at 473.

Kansas's interest in applying its modified comparative fault rules "is the entitlement of Kansas to shield its residents from the effects of torts committed in the state if the claimant is found to have been the more at fault." [11] *Hicks v. Graves Truck Lines, Inc.,* 707 S.W.2d 439, 443 (Mo.App. W.D.1986). Missouri's pure comparative fault approach, however, seeks to hold all negligent parties accountable for their negligent acts, regardless of proportion of fault, thus demonstrating Missouri's interest in providing a "ratable damage recovery to Missouri claimants who sue in Missouri courts." *Id.* at 444.

As for the statutory damages cap, "Kansas arguably has an interest in having its statutory cap applied in order to protect a corporation doing business in Kansas from an excessive jury verdict." *Livingston,* 313 S.W.3d at 723. Missouri's lack of any statutory damages cap, however, demonstrates Missouri's "interest in promoting an admonitory effect on negligent defendants" that conduct business in Missouri. *Id.* And where, as here, a corporation conducts business in both Kansas and Missouri, both states have an interest in having their damages law applied. *Id.*

█ Although "[t]he question of negligence, as the various cases have indicated,

---

non-parties that were involved in the transaction as well. *Gust v. Jones,* 162 F.3d 587, 593 (10th Cir.1998). Thus, a plaintiff could theoretically be barred from recovery, even if found to be at less than 50% fault, if the defendant's fault—after considering fault attributed to non-party tortfeasors—is less than that attributed to plaintiff.

11. Image Flooring is not technically a "resident" of Kansas, insofar as it is incorporated in Missouri. And it is well settled that "a corporation is an artificial person at law, and its residence or citizenship is therefore fic-

tional." *State ex rel. Broglin v. Nangle,* 510 S.W.2d 699, 702 (Mo. banc 1974). When evaluating a corporation, courts will typically consider the corporation's place of business. *Id.* at 702–03. Here, Image Flooring does business in both Missouri and Kansas. Thus, even though Image Flooring is not a "resident," we assume that Kansas has some interest in shielding those who do business within its borders from the effects of torts committed in Kansas if the claimant is found to be more at fault.

should be determined by the law of the state where the tort occurs because that is the state with the dominant interest concerning that issue," the same cannot be said when the issue is the right of recovery. *Kennedy*, 439 S.W.2d at 185. "[C]omparative-fault rules are designed to govern what happens after an injury, i.e., the rules for recovery." MATTHEW BENDER, 2 COMPARATIVE NEGLIGENCE LAW AND PRACTICE, § 12.30[2], at 12–77 (Richard E. Kaye rev. ed.2004). And, obviously, the same is true of statutory damages caps.

Where the issue involves a right of recovery as opposed to a question of liability, the domicile of the parties becomes a highly significant contact, as states have a great interest in applying their own compensation-related laws to their own residents, but very little interest in applying those same laws to non-residents. *See, e.g., Goede*, 143 S.W.3d at 27 ("[W]e discern no overwhelming interest in California having its laws regarding compensation applied to the claims of non-resident plaintiffs."); *see also Hicks*, 707 S.W.2d at 443–44 (discussing, with approval, a Colorado case that drew a distinction between "rules of conduct" and "rules of recovery," noting that states have a legitimate interest in applying their own rules of recovery to both their own residents and those who seek relief in their courts).

Here, although Kansas was the place of injury, the conduct giving rise to injury, and the relationship of the parties, those factors are considered more significant only when the conflict at issue involves a rule of conduct or question of liability. Where, however, the conflict involves a rule of recovery or question of compensation, the domicile of the parties is the most significant contact. Thus, the fact that all parties were domiciled in Missouri demonstrates that Missouri has the most significant contacts as to the issues in dispute—

comparative fault laws and statutory damage caps. While we recognize that Kansas does have an interest in applying its compensation laws insofar as Image Flooring does business in Kansas, this fact, alone, is not significant enough to overcome the other contacts Missouri has through Wilson's residence, Rapp's residence, and Image Flooring's incorporation and principal place of business, all in Missouri. Consequently, the trial court committed no error in applying Missouri law.

Image Flooring and Rapp's first point is denied.

### III. Intervening Cause

In their final point on appeal, Image Flooring and Rapp claim that the trial court erred in denying their motion for judgment notwithstanding the verdict on the ground that Wilson's failure to remove the forklift extenders by hand constituted an intervening cause, thereby relieving Image Flooring and Rapp of liability. We disagree.

"The issue of an intervening cause[ ] occurs when 'a new and independent force ... so interrupts the chain of events that it becomes the responsible, direct, proximate, and immediate cause of the injury, but it may not consist of an act of concurring or contributory negligence.'" *English v. Empire Dist. Elec. Co., Inc.,* 220 S.W.3d 849, 857 (Mo.App. S.D.2007) (quoting *Simonian v. Gevers Heating & Air Conditioning, Inc.,* 957 S.W.2d 472, 475 (Mo.App. E.D.1997)). "An intervening cause will not break the chain of causation when it is merely a natural progression of events that were set in motion by the original negligent act." *Id.* "An intervening cause will not preclude liability if it 'is itself a foreseeable and natural product of the original negligence.'" *Esmond v. Bituminous Cas. Corp.,* 23 S.W.3d 748, 753 (Mo.App. W.D.2000) (quoting *Tompkins v.*

*Cervantes,* 917 S.W.2d 186, 191 (Mo.App. E.D.1996)). "And ... it will not do so if it constitutes an act of the plaintiff himself which is a foreseeable consequence of the original act of negligence, for the foreseeable negligence of the plaintiff is viewed as concurring or contributory negligence." *Id.*

■ In evaluating whether a particular act or omission constitutes a sufficient break in the chain of events so as to be considered an intervening cause, Missouri follows the Restatement (Second) of Torts § 442. That section identifies the following considerations important to the determination of whether an intervening force constitutes a superseding cause of harm:

(a) the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;

(b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;

(c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

(d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

(e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

(f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

In light of the fact that the alleged intervening act was done by Wilson, rather than a third party, considerations (d) through (f) would not support a finding of superseding cause.

Likewise, considerations (a) through (c) do not support a finding of superseding cause insofar as the harm that resulted is exactly the same kind of harm that could have resulted from Rapp's negligence, alone; it was not an extraordinary consequence; and it was a normal result of the situation. The truck rolled away from the docking plate, resulting in Wilson's fall, which could have happened during the loading process due to the failure to secure the vehicle properly. It is merely fortuitous that the truck did not roll until after the skid was originally loaded. And because complications in the loading process were reasonably foreseeable, Wilson's failure to remove the forklift extenders by hand did not constitute a superseding cause of her injuries.

Image Flooring and Rapp's final point is denied.

## Conclusion

There is a punitive damages exception to the general rule in *McHaffie,* which otherwise bars direct liability negligence claims against an employer. Here, although we question whether Wilson properly availed herself of this exception based upon the facts pled in her petition supporting her claim for punitive damages, we nevertheless reverse the entry of summary judgment because the issue of sufficiency of the facts supporting the punitive damages claim was not properly before the trial court for determination. Thus, the court committed error in granting partial summary judgment on Wilson's direct liability negligence theories against Image Flooring on a claim not presented to it.

The trial court committed no error, however, in applying Missouri, rather than Kansas, law at trial because, on the issues of compensation and right of recovery, Missouri had the most significant contacts with the case based upon the fact that all parties were domiciled in Missouri.

Finally, the trial court committed no error in denying Image Flooring and Rapp's motion for judgment notwithstanding the verdict in that Wilson's failure to remove the forklift extenders by hand did not constitute a superseding cause of harm; rather, it was merely contributory negligence to be considered by the jury.

The trial court's entry of partial summary judgment is reversed and remanded for further proceedings consistent with this opinion, but its judgment in all other respects is affirmed.

THOMAS H. NEWTON and LISA WHITE HARDWICK, Judges, concur.