**JEFFERSON COUNTY FIRE PRO-
TECTION DISTRICTS ASSOCIA-
TION, et al., Appellants,**

v.

**Matt BLUNT, Jeremiah Nixon,
et al., Respondents.**

No. SC 87239.

Supreme Court of Missouri,
En Banc.

Nov. 21, 2006.

Steven W. Koslovsky, Francis J. Vatterott, Maryland Heights, Steven Cotton Walker, Jefferson City, for appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., James R. McAdams, Shannon Wright Morgan, Asst. Attys. Gen., James B. Deutsch, Jefferson City, JoAnn T. Sandifer, Jill D. Switkin, Robert K. Sweeney, St. Louis, David M. Korum, Clayton, Nicholas G. .Gasaway, Marc B. Fried, Dennis J. Kehm, Jr., Stanley D. Schnaare, Hillsboro, for respondents.

MARY R. RUSSELL, Judge.

A statute with a narrow 1200 person population range classification is challenged as an unconstitutional special law. The statute, codified at section 321.222, RSMo Supp.2005, removes the power of certain fire protection districts to adopt fire protection codes related to home construction.[1] It applies to fire protection districts wholly within first class counties with more than 198,000 but fewer than 199,200 inhabitants. Jefferson County is the sole county to which the statute currently applies.[2]

The Jefferson County Fire Protection Districts Association and its member fire

---

1. Previously, those fire protection districts could adopt regulations related to home construction, such as regulations requiring basement bedrooms to have emergency access. Section 321.222 removes the power of the fire protection districts to enact such regulations.

2. Jefferson County is a first class county with a population of 198,099 as of the April 1, 2000 census.

protection districts ("fire districts") filed suit,[3] seeking a declaration that section 321.222 violates the prohibition against special legislation under article III, section 40(30) of the Missouri Constitution. The defendants in the suit included certain government officials and several others ("state").[4] The circuit court granted summary judgment to the state, finding that the fire districts did not show the statute was unconstitutional. The fire districts appeal directly to this Court, which has jurisdiction. Mo. Const. art. V, sec. 3.

Section 321.222 is an unconstitutional special law in that the state failed to show substantial justification for the narrow, presumably unconstitutional population range. The trial court's judgment is reversed and, pursuant to Rule 84.14, judgment is entered in favor of the fire districts.

## I. Standard of Review

■■■ Appeals from a grant of summary judgment are essentially reviewed *de novo*. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). To be entitled to summary judgment, the moving party must demonstrate that there is no genuine dispute of material fact and that the movant is entitled to summary judgment as a matter of law. *Id.* at 381; Rule 74.04(c). Here, there is no dispute as to material facts, so the Court evaluates if a party is entitled to summary judgment as a matter of law.

## II. Special Laws—Historical Background

A brief review of the history of the constitutional prohibition against special legislation is helpful to understand its significance. Special legislation refers to statutes that apply to localities rather than to the state as a whole and statutes that benefit individuals rather than the general public. Robert M. Ireland, *The Problem of Local, Private, and Special Legislation in the Nineteenth–Century United States*, 46 Am. J. Legal Hist. 271, 271 (2004). Prior to the mid to late 1800s, state legislatures primarily enacted special legislation and very little general legislation. *Id.* Special legislation made up 87% of state legislation passed in Missouri before 1859. Christopher L. Thompson, Note, *Special Legislation Analysis in Missouri and the Need for Constitutional Flexibility*, 61 Mo. L.Rev. 185, 192 (1996).

The subjects of special legislation were varied. Laws were enacted to divorce cou-

---

3. The plaintiffs in the case were Jefferson County Fire Protection Districts Association (a not-for-profit corporation comprised of fire protection districts organized under chapter 321 RSMo that are located wholly within Jefferson County), Ollie Stuckmeyer and Stephanie A. Mayer (individual residents and taxpayers of Jefferson County), and the following fire protection districts: Antonia, Cedar Hill, DeSoto Rural, Dunklin, Goldman, Hematite, High Ridge, Hillsboro, Jefferson R–7, Mapaville, Rock Community, Shady Valley, and Springdale.

4. The original defendants to the action were Governor Matt Blunt, Attorney General Jeremiah Nixon, and the following Missouri political subdivisions: Jefferson County, City of Arnold, City of Byrnes Mill, Village of Cedar Hill Lakes, City of Herculaneum, City of Hillsboro, City of Olympian Village, Village of Parksdale, City of Pevely, and the Town of Scotsdale.
The intervenor-defendant in this suit was the Home Builders Association of Greater St. Louis, a not-for-profit corporation comprised of developers and others in the St. Louis metropolitan area.

ples, to validate invalid marriages, to control certain animals in certain places, to change interest rates at individual banks, to grant charters incorporating businesses, to provide for special punishments (e.g., whipping wife beaters) in specific counties, to create special local courts and judges, to change the terms in wills and trusts, to alter the course of judicial proceedings in individual cases, to create local tax laws and special tax exemptions, to authorize cities and counties to sell bonds to fund railroads that were never built, and more. Ireland, *supra*, at 285–92.

There were numerous problems with special legislation. The amount passed was so voluminous that individual legislators could not have taken more than a cursory look at each bill, and it was often hastily and sloppily drafted. Ireland, *supra*, at 273–74. Special legislation took away from the time legislators spent on needed general legislation. *Id.* at 277, 279. Instead, the legislators spent their time engaged in the practice of logrolling, whereby a legislator could count on other legislators to vote for his special legislation in return for him voting for their special legislation. *Id.* at 273. Any legislator who dared challenge a particular piece of special legislation risked ostracism. *Id.* at 274. And since the legislation did not apply to any other legislators' districts, the other legislators did not consider the merits of the legislation. Thomas F. Green, Jr., *A Malaproprian Provision of State Constitutions*, 24 WASH. U.L.Q. 359, 364 (1939). Indeed, an individual legislator during that time period had exclusive powers with regard to every matter of legislation that affected his county and the people in it. Ireland, *supra*, at 274. The prevalence of special legislation led to extremely powerful lobbyists and sometimes outright corruption. *Id.* at 277. The gen-

eral public seldom received notification of pending special legislation and generally learned of it only after it was enacted. *Id.* at 275.

These problems existed across the country, leading to 46 states enacting constitutional prohibitions against special legislation. Recent Case, *Municipal Corporations—Legislative Control—Statute Applicable to a Single County Does Not Violate Constitutional Prohibition Against Special Legislation*, 76 HARV. L.REV. 652, 652–53 (1963). At the Missouri Constitutional Convention of 1875, there was "a unanimous desire to provide against special legislation." 5 Debates of the Missouri Constitutional Convention of 1875, 60 (Statement of Mr. Priest). Further, the delegates did not want the Legislature to have the power to decide what legislation was special. One delegate stated, "I think if there is any one question upon which the Supreme Court of the State ought to have the right and power to review and supervise the action of our Legislature it is that very question of local legislation." 7 Debates of the Missouri Constitutional Convention of 1875, 397 (Statement of Mr. Bradfield).

In an address to the people of Missouri, the delegates of the Constitutional Convention addressed special legislation:

The evils of local and special legislation have become enormous. We need but look to our session acts to be satisfied that this species of legislation occupies the larger portion of the time of our General Assemblies, to the neglect and prejudice of public interests. The expense to the State in passing and publishing such laws and the combinations by which private interests have been advanced and dangerous monopolies created are well known. Under the pro-

posed Constitution the General Assembly is prohibited from passing such laws.

2 Journal of the Missouri Constitutional Convention of 1875, 878 (Isidor Loeb & Floyd C. Shoemaker eds., State Historical Society of Missouri, 1920). The prohibition against special legislation was included in the Constitution of 1875 as approved by the voters. It was also included in the Missouri Constitution of 1945, as the delegation decided to leave the original language of 1875 substantially the same. Consequently, the Missouri Constitution has prohibited special legislation where general legislation can be made applicable since 1875.

### III. Missouri Constitution's Special Law Prohibition

 Today, article III, section 40(30) of the Missouri Constitution provides that "[t]he general assembly shall not pass any local or special law ... where a general law can be made applicable, and whether a general law could have been made applicable is a *judicial question to be judicially determined* without regard to any legislative assertion on that subject." (emphasis added). A law is facially special if it is based on close-ended characteristics, such as historical facts, geography, or constitutional status. *Tillis v. City of Branson,* 945 S.W.2d 447, 449 (Mo. banc 1997). A facially special law is presumed to be unconstitutional. *O'Reilly v. City of Hazelwood,* 850 S.W.2d 96, 99 (Mo. banc 1993). "The party defending the facially special statute must demonstrate a 'substantial justification' for the special treatment." *Harris v. Missouri Gaming Comm'n,* 869 S.W.2d 58, 65 (Mo. banc 1994).

 A law based on open-ended characteristics is not facially special and is presumed to be constitutional. *O'Reilly,* 850 S.W.2d at 99. Population classifications are open-ended in that others may fall into the classification. *State ex rel. City of Blue Springs v. Rice,* 853 S.W.2d 918, 921 (Mo. banc 1993). Such laws are not special if the classification is made on a reasonable basis. *Blaske v. Smith & Entzeroth, Inc.,* 821 S.W.2d 822, 831 (Mo. banc 1991). The test for whether a statute with an open-ended classification is special legislation under article III, section 40 of the Missouri Constitution is similar to the rational basis test used in equal protection analyses. *Id.* at 832. The burden is on the party challenging the constitutionality of the statute to show that the statutory classification is arbitrary and without a rational relationship to a legislative purpose. *Treadway v. State,* 988 S.W.2d 508, 511 (Mo. banc 1999).

The rationale for holding that population classifications are open-ended fails, however, where the classification is so narrow that as a practical matter others could not fall into that classification. Where a classification is this narrow, the presumption that a population-based classification is open-ended, and therefore a general law, would contravene the purpose behind the constitutional prohibition against special legislation.

 To address this situation, and to provide a guide by which the courts can determine whether a population classification will maintain its presumption of constitutionality, this Court will apply a multifaceted test. The presumption that a population-based classification is constitutional is overcome if: (1) a statute contains a population classification that includes only one political subdivision, (2) other political subdivisions are similar in size to the targeted political subdivision, yet are not in-

cluded, and (3) the population range is so narrow that the only apparent reason for the narrow range is to target a particular political subdivision and to exclude all others. If all three circumstances exist, the law is no longer presumed to be general, but is presumed to be a special law, requiring those defending it to show substantial justification for the classification. Because of the General Assembly's possible reliance on previous cases not articulating this presumption, only statutes passed after the date of this opinion are subject to this analysis.

## IV. Analysis of Section 321.222

■ Section 321.222.7 includes a statutory classification based on population. It states:

This section shall only apply to any fire protection district located wholly within any county of the first classification with more than one hundred ninety-eight thousand but fewer than one hundred ninety-nine thousand two hundred inhabitants.

Although this Court recognizes that the General Assembly has historically used population classifications in legislation, section 321.222.7 contains the narrowest population range of any reported case of this Court. Section 321.222 only applies to Jefferson County, the only county with a population between 198,000 and 199,200. There are other counties of about the same size as Jefferson County (e.g., Clay County, population 184,006). The population range in this statute (1200) is a tiny fraction (.6%) of the upper population limit in the statute of 199,200. The only apparent reason this statute has a population range that represents only .6% of the upper population limit is to exclude all counties other

than Jefferson. Thus, section 321.222 is presumed to be a special law. The state must show a substantial justification for the classification.

The state offers several possible grounds the General Assembly may have had for the classification. The first possible ground was to eliminate the duplicative permitting process in Jefferson County. Prior to the enactment of section 321.222 builders in Jefferson County had to obtain two permits for residential construction: one permit from the appropriate fire protection district and another permit from either the applicable municipality or from Jefferson County. Section 321.222 eliminates the need for the permit from the fire protection district and, consequently, reduces the burden of duplicative permits on residential builders and home buyers. However, home buyers and residential builders in every county with a chapter 321 fire protection district are subject to dual regulation. The state did not offer substantial justification for eliminating the dual regulatory system in only Jefferson County and not other counties.

The state also suggests that the General Assembly's possible rationale was Jefferson County's unique size and growth. Although the state acknowledges that other counties are similar in size (e.g., Clay County, population 184,006), and in growth (e.g., St. Charles, Greene, and Clay Counties), it posits that it is perhaps because of Jefferson County's suburban/rural mix that the General Assembly wanted to streamline its fire code regulation system. The state did not show, however, how Jefferson County's suburban/rural mix is significantly different from other counties. Further, section 321.222 does not apply to all the fire protection districts in Jefferson

County.[5] The state's proffered rationale does not provide substantial justification for the classification.

It is the duty of this Court to be faithful to the constitution. "[I]t cannot ascribe to it a meaning that is contrary to that clearly intended by the drafters. Rather, a court must undertake to ascribe to the words of a constitutional provision the meaning that the people understood them to have when the provision was adopted." *Farmer v. Kinder*, 89 S.W.3d 447, 452 (Mo. banc 2002). It is clear here that the drafters and voters adopted the provision to prohibit special legislation to prevent the General Assembly from doing what it did in section 321.222. If a statute conflicts with a constitutional provision or provisions, this Court must hold the statute invalid. *State v. Kinder*, 89 S.W.3d 454, 459 (Mo. banc 2002). The state did not show substantial justification for the narrow population range in section 321.222. It is this Court's duty to hold that section 321.222 is an unconstitutional special law.

## V. Conclusion

Section 321.222 targeted only Jefferson County when other counties of similar size were excluded. The section's population range was so narrow that the only apparent reason for it was to target Jefferson County and exclude all other counties.[6] Section 321.222's narrow population range

is presumably unconstitutional, and the state did not meet its burden in showing substantial justification for it. Thus, section 321.222 is a special law. A broader population range would have been a more natural and reasonable classification. As the General Assembly passed a special law where a general law could be made applicable, section 321.222 violates article III, section 40(30) of the Missouri Constitution. The judgment of the trial court is reversed and judgment is entered in favor of the fire districts. Rule 84.14.

All concur.

---

5. The legislation does not apply to two fire protection districts, Pacific and Eureka, because those districts are not located wholly within Jefferson County.

6. Many statutes apply to "any city not within a county," a class of which St. Louis City is the only member. *See, e.g.* section 58.217, RSMo Supp.2006. *This opinion does not overrule Zimmerman v. State Tax Commission*

*of Missouri*, 916 S.W.2d 208, 209 (Mo. banc 1996), to the extent that it held that St. Louis City is recognized by the Missouri Constitution as a unique entity in a unique class, and legislation enacted to address the class of which St. Louis City is the only member is not special legislation within the meaning of article III, section 40.