

# SUPREME COURT OF MISSOURI
## en banc

CITY OF DESOTO, A POLITICAL )
SUBDIVISION OF THE STATE OF )
MISSOURI, AND JAMES ACRES, )
                                     )
       Appellants, )
                                     )
vs. )        **No. SC94746**
                                     )
JEREMIAH W. NIXON, GOVERNOR )
OF THE STATE OF MISSOURI, and )
CHRIS KOSTER, ATTORNEY )
GENERAL OF THE STATE OF )
MISSOURI, )
                                     )
       Respondents. )

### APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY, MISSOURI
**The Honorable Patricia Joyce, Judge**

*Opinion issued January 12, 2016*

The City of De Soto and De Soto resident James Acres (collectively "De Soto") appeal the trial court's grant of summary judgment to the governor and attorney general on De Soto's suit seeking a declaratory judgment that section 321.322.4[1] violates the prohibition against special laws contained in article III, section 40 of the Missouri Constitution.

---

[1] Section 321.322.5 was adopted by House Bill No. 307 in 2013 but due to subsequent statutory revisions that section is now subsection 4. All statutory citations refer to RSMo 2000 and RSMo Supp. 2013, unless otherwise indicated. De Soto's petition also alleged that HB 307 violated the clear title and single subject requirements set out in the Missouri Constitution, but on appeal it waives that argument.

This case comes within the scope of this Court's holding in *Jefferson Cnty. Fire Protection Districts Ass'n v. Blunt, 205 S.W.3d 866, 870-71 (Mo. banc 2006)*, that a law is presumptively a special law in violation of article III, section 40 if, as here: (1) only a single political subdivision falls within its criteria even though (2) there are other political subdivisions of comparable size, and (3) the population range is so narrow that the only apparent reason for the narrow range is to target a particular political subdivision and to exclude all the others. This Court rejects the State's suggestion that this Court should consider the limiting effects of each of the six listed criteria set out in section 321.322.4 (two of which are population-based and four of which are based on other factors) individually, so that if any other city reasonably will come within each criterion, separately considered, then the statute would not be a special law, even though no other city reasonably will come within all six criteria considered together. As the six statutory criteria are applied as a whole in determining whether section 321.322.4 applies to a particular city, this Court considers them as a whole in determining whether the six criteria, as a practical matter, are drawn so narrowly that they will not apply to another city and "the only apparent reason for the narrow range is to target a particular political subdivision and exclude all others." *Id. at 871.* In examining all six criteria together, this Court concludes that section 321.322.4 is a special law in violation of article III, section 40 of the Missouri Constitution.[2]

_____

[2] While De Soto's brief notes that article III, sections 40(21) and 40(28) prohibit related types of special laws, and while the brief paraphrases part of the language of subsection 40(28) in its conclusion, neither the points relied on nor the argument section of the brief

Because section 321.322.4 under this test is a special law, the State was required to provide a substantial justification for enacting it rather than a general law.  The State offered no such evidence, and the trial court erred in granting summary judgment to the State.  Moreover, because both parties concede that the identical issues govern the motion for summary judgment filed by De Soto and agree as to all facts on which judgment was sought by both parties, no purpose would be served by remand for reconsideration of De Soto's motion for summary judgment.  This Court reverses the trial court's judgment and enters judgment in favor of De Soto.

## I.      STATEMENT OF FACTS AND PROCEDURAL HISTORY

Section 321.322 describes how a city is to make post-annexation payments to a fire protection district after the city annexes part of the fire protection district.  Section 321.322.1 sets out the payment method for cities generally.  Section 321.322.4, added in 2013, excludes from the procedures set out in subsection 1 any city that meets six specific criteria, stating in relevant part:

> The provisions of [section 321.322.1] shall not apply where the annexing city or town operates a city fire department, is any city of the third classification with more than six thousand but fewer than seven thousand inhabitants and located in any county with a charter form of government and with more than two hundred thousand but fewer than three hundred fifty thousand inhabitants, and is entirely surrounded by a single fire protection district.

> De Soto brought this suit seeking a declaratory judgment that section 321.322.4

explain how these sections might apply nor do they cite or discuss any case interpreting or applying these subsections.  Instead, the brief exclusively discusses *Jefferson County* and other cases applying subsection 40(30). This Court's analysis, therefore, will be limited to a discussion of the latter subsection of article III, section 40.

3

violates Missouri's constitutional prohibition of local or special laws. The record shows that De Soto operates a city fire department; De Soto is a third-class city with an estimated population of 6,421 located in Jefferson County; Jefferson County is a charter county and has a population of 218,733; and De Soto is completely surrounded by a single fire protection district, the De Soto Rural Fire Protection District. De Soto, therefore, meets all six criteria set out in the exclusion contained in section 321.322.4.

De Soto argues that these six criteria are so narrowly drawn that the law's only apparent purpose is to target the City of De Soto and that, as a practical matter, no other city or town will fall within the exclusion. Although census data show that many Missouri cities are of comparable size to De Soto, the record indicates that no other Missouri city meets the six criteria set out in section 321.322.4. On this basis, De Soto filed a motion for summary judgment.

The State filed a cross-motion for summary judgment, arguing that the criteria in the statute are open-ended because they are all subject to change through population growth or political decisions. The trial court granted the State's motion and overruled De Soto's, finding that the criteria were open-ended because "other political subdivisions … could be included [under section 321.322.4] based on political decisions made … by the people of particular Missouri cities and counties." De Soto appeals.

## II.  STANDARD OF REVIEW

The propriety of summary judgment is solely an issue of law.  *City of St. Louis v. State, 382 S.W.3d 905, 910 (Mo. banc 2012).*  Appellate courts review a grant of summary judgment *de novo*.  *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply*

4

*Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "When considering appeals from summary judgments, this Court will review the record in the light most favorable to the party against whom judgment was entered." *Id.* Under Rule 84.14 an appellate court may reverse the judgment of the trial court and "give such judgment as the court ought to give." *Rule 84.14*.

### III. SECTION 321.322.4 IS FACIALLY A SPECIAL LAW

#### A. History of Special Laws Prohibition

The Missouri Constitution prohibits the legislature from passing "any local or special law … where a general law can be made applicable, and whether a general law could have been made applicable is a judicial question to be judicially determined without regard to any legislative assertion on that subject." *MO. CONST. art. III, § 40*. A comparable constitutional ban on special or local legislation has been a part of the Missouri Constitution since the first such ban was adopted by Missouri voters in 1875. *Jefferson Cnty., 205 S.W.3d at 870*.

Although recent cases use the terms "local law" and "special law" almost interchangeably, historically these terms referred to different but related types of non-general laws. "Local law" traditionally was the term used to describe a law "which relates or operates over a particular locality instead of over the whole territory of the state." *BLACK'S LAW DICTIONARY 939 (6th ed. 1990)*. By contrast, a "special law" referred to a law "relating to particular persons or things; one made for individual cases or for particular places or districts; one operating upon a selected class, rather than upon the public generally." *Id. at 1397–98*. A special law was also sometimes called a

5

"private law," that is, a law relating to a particular individual, association or corporation, rather than a particular locale. *Id. at 1398, 1196.*

Black's second definition for local laws is for all practical purposes, however, the same as that for special laws, for both definitions state that they refer to laws that relate to "certain persons or things of a class … instead of all of the class." *Id. at 939, 1397.* It may not be not surprising, therefore, that, over time, the two terms came to be used interchangeably, so that the framers of Missouri's 1875 and 1945 Constitutions chose to limit local and special laws together in the same section of the Missouri Constitution ("No local or special law may be adopted …") when drafting what is now article III, section 40.[3] Many cases, including this Court's most recent two opinions addressing article III, section 40, have effectively merged the terms, referring to both local and special laws simply as "special laws." *See, e.g., Jefferson Cnty., 205 S.W.3d at 870* and *City of St. Louis, 382 S.W.3d at 914.* For consistency, in this opinion this Court also will refer to this law as a "special" law although it has aspects of what historically would have been considered a local law as well.

## B. Section 321.322.4 is a Special Law

The most often applied test for determining whether a law qualifies as a special law is whether the law is based on open-ended or closed-ended characteristics. *City of St. Louis, 382 S.W.3d at 914, citing, Jefferson Cnty., 205 S.W.3d at 866.* A law based on

---

[3] During the 1945 Constitutional Convention, a debate arose regarding whether the prohibition against special or local laws would remain in the Constitution, but in the debate both terms were used with little to no distinction between them. *See DEBATES OF THE MISSOURI CONSTITUTION 1945, Vol. 16, 5068–94 (Dec. 20, 1974).*

closed-ended (non-changing) characteristics, such as historical or physical facts, geography or constitutional status, is facially special because others cannot come into the group nor can its members leave the group. *Tillis v. City of Branson, 945 S.W.2d 447, 449 (Mo. banc 1997).* If a law is facially special, the party defending the facially special law must demonstrate a substantial justification for the failure to adopt a general law instead. *Id.*

A law based on open-ended characteristics is not facially special and ordinarily is presumed to be constitutional. *O'Reilly v. City of Hazelwood, 850 S.W.2d 96, 99 (Mo. banc 1993).* Normally, population classifications are open-ended in that others may fall into the classification and members of the classification may leave it. *Tillis, 945 S.W.2d at 449.* When population classifications are open-ended, laws based on them are not special laws and do not violate article III, section 40 if the classification is made on a reasonable basis. *Jefferson Cnty., 205 S.W.3d at 870.*

But, the legislature may not defeat the purpose of the prohibition against special laws by adopting a provision that on its face appears general and open-ended, but which realistically applies only to a specific or narrow group of subjects. For that reason, "[t]he rationale for holding that population classifications are open-ended fails … where the classification is so narrow that as a practical matter others could not fall into that classification." *Id.*

*Jefferson County* set out a three-part test for determining when the "presumption that a population-based classification is constitutional is overcome", *id.*, because, as a practical matter, other political subdivisions will not fall within the classification:

7

(1) a statute contains a population classification that includes only one political subdivision, (2) other political subdivisions are similar in size to the targeted political subdivision, yet are not included, and (3) the population range is so narrow that the only apparent reason for the narrow range is to target a particular political subdivision and to exclude all the others.

*Id. at 870-71*. When a nominally open-ended law meets these three criteria it will be considered a special law because, as a practical matter, no other political subdivision can meet those criteria. *Jefferson Cnty., 205 S.W.3d at 870*.

Applying the principles set out in *Jefferson County* and similar cases here,[4] the exclusion in section 321.322.4 excepts from the reach of section 321.322.1 those cities that meet each of its six geographic and political criteria – the city must: (1) operate a city fire department, (2) be a third-class city, (3) have more than 6,000 but fewer than 7,000 inhabitants, (4) be located in any county with a charter form of government with

---

[4] The holding in *Jefferson County* provided an important clarification of the law regarding when population-based characteristics do not preclude a law being a special law even though nominally open-ended. *Jefferson County* was not a break with prior law, however, for earlier cases similarly had held that this Court must look to the real effect of statutory criteria rather than to their nominal generality to determine whether the law is a general or special one. *McKaig v. Kansas City, 256 S.W.2d 815, 817 (Mo. banc 1953)*, provides a good example. In invalidating a law that prohibited car dealerships from being open on Sundays because other merchants could not come within its operation, this Court noted, "The test of a special law is the appropriateness of its provisions to the objects that it excludes. It is not, therefore, what a law includes, that makes it special, but what it excludes." *Id.* (citations omitted). *McKaig* then continued by stating that even when the characteristics are ostensibly general:

> If in fact the act is by its terms or *'in its practical operation* […] can only apply to particular persons or things of a class*, then it will be a special or local law, however carefully its character may be concealed by form of words.' *Laclede Power & Light Co. v. City of St. Louis, supra, 182 S.W.2d loc. cit. 72*.

*Id.* (Emphasis added).

8

(5) more than 200,000 but fewer than 350,000 inhabitants, and (6) be entirely surrounded by a single fire protection district.

It is uncontested that section 321.322.4 contains both a city and county population classification, and both De Soto and the State rely on 2010 census data showing that no city other than De Soto meets both population requirements as set out in the provision. This is so despite the fact, discussed further below, that these same statistics show that other cities and towns are similar in size to De Soto. The first two elements set out in Jefferson County, therefore, are satisfied.[5]

Whether section 321.322.4 is a special law therefore depends on whether it meets the third element set out in *Jefferson County* – whether, as a practical matter, the population range or other characteristics are "so narrow that the only apparent reason for the narrow range is to target a particular political subdivision and to exclude all others." *205 S.W.3d at 870*. In resolving this issue, this Court rejects the State's suggestion that a court should look at each of the six statutory criteria seriatim, asking itself whether any

---

[5] The State argues that this Court modified or clarified *Jefferson County* in *City of St. Louis, 382 S.W.3d at 913–15,* by ruling that in determining whether the first two elements are satisfied a court should look at whether others in the future might fall into the classification of the statute, rather than, as stated in *Jefferson County,* whether other generally comparable political subdivisions now fall within its terms. This argument inexplicably mixes the first two elements of the *Jefferson* County test with the third element. As just quoted above, it is the third element that addresses whether: "(3) the population range is so narrow that the only apparent reason for the narrow range is to target a particular political subdivision and to exclude all the others." The first two elements, by contrast, clearly address whether subdivisions other than the subject one fall within the population range at the current time. *City of St. Louis* concerned an entirely different kind of ordinance, which affected whether firefighters were required to live in the City of St. Louis while its schools were unaccredited. The analysis in that case did not and did not purport to modify *Jefferson County*.

9

other city someday might meet any particular criterion. The statute requires a city to fall within all six criteria to be excepted from the scope of section 321.322.1. The combined effect of the six criteria, therefore, must be considered.

No other city even meets both of the population requirements in the statute – the city must have between 6,000 and 7,000 residents and the county must have between 200,000 and 350,000 residents. Both the State and De Soto agree that only Jefferson County falls within the 200,000 to 350,000 county population range set out in the statute, and neither party has identified any other county that, as a practical matter, is likely to fall within the range of 200,000 to 350,000 in the foreseeable future. Additionally, while there are many cities with 6,000 to 7,000 residents, those cities either are not in a non-qualifying county, or are not third-class cities, or are not in charter counties, or are not surrounded by a single fire protection district, and so forth. [6] Further, the requirement that the city be entirely surrounded by a single fire protection district excludes many cities that have water or other immutable characteristics on one or more sides or that abut

---

[6] To illustrate this, relying on the 2010 census data on which both the State and De Soto rely, the Court notes that Black Jack and Caruthersville are third-class cities with populations of 6,924 and 6,127, respectively. *Secretary of State Jason Kander*, *The Missouri Roster 2013-2014 at 147, 162* (The Missouri Roster contains the 2010 census data and is utilized by De Soto and the State). Both cities, therefore, fall within the city-population classification of the statute. Blackjack and Caruthersville, however, are located, respectively, in St. Louis County – a first-class county with a charter form of government and a population of 998,954 – and Pemiscot County, a third-class county without a charter form of government and a population of 18,296; neither comes near the 200,000 to 350,000 county-population requirement of section 321.322.4. It is at the very least highly improbable that either of these two cities will ever meet all six criteria, much less the county-population requirement. There are numerous other cities that De Soto cites – and with which the State does not disagree – with populations at or near the population classifications, but none meet all six criteria.

other cities that do not have fire protection districts.[7]

Finally, while some of the non-population criteria, such as becoming a third-class city or a charter county, are political decisions that might well be considered open-ended were they the sole criteria, here three different entities – a city, a county, and a fire protection district – would all have to decide to make changes in precisely the manner required by the statute for subsection 4 to apply, even assuming the population and other requirements somehow could be met.[8]

The likelihood of all of these factors converging and of another city coming within

---

[7] To illustrate this, this Court again uses the 2010 census data on which both the State and De Soto rely. Currently, the closest city to meet all six criteria is Crystal City, also located in Jefferson County. Jefferson County has a population of 218,733 and has a charter form of government, both requirements of section 321.322.4. Crystal City, however, is not surrounded by a single fire protection district, and its population is more than a thousand residents shy of the city-population classification in the statute. Its eastern border abuts the Mississippi River, and abutting its western border is the City of Festus, which operates its own fire department. Moreover, from 2010 to 2011, Crystal City had only seen a growth of 25 people. Assuming that rate continues consistently, Crystal City will not fall within the boundaries of the city-population classification for another 45 years. As a practical matter, Crystal City will not fall within all six criteria of the statute.

[8] For example, section 321.322.4's non-population criteria are much more complex than the residency requirement at issue in *City of St. Louis*. First, to change the class of a city – e.g. from fourth-class to third-class or from a village to fourth class – the city must fall within the population requirement and the change must be approved by a majority of all voters in the city or town. *§§ 72.070, 72.030*. Second, a city has even less control over whether it is surrounded by a single fire protection district. The boundaries of such districts are changed by a public vote not of city residents but of residents of the entire district. *§ 321.120.1*. Although some of these voters will be residents of the city, the majority may not be. Finally, a city has the least control over the type of county in which it is located; whether a county has a charter form of government is entirely outside the power of any individual city located within. A vote by all members of the county, not city, decides whether a county will adopt or maintain a charter form of government. *MO. CONST. art. VI, § 18(a)*. Assuming a city or town meets all of these requirements, it still must satisfy both the city and county population requirements.

11

the scope of section 321.322.4 is sufficiently unlikely that, in the words of *Jefferson County*, "the only apparent reason for the narrow range is to target a particular political subdivision and to exclude all the others." *Id. at 871*.

Where, as here, the three *Jefferson County* elements are satisfied, a law is presumptively special and the burden shifts to the State to show a substantial justification for the special law. The State offered no evidence of such a justification in response to De Soto's motion for summary judgment or in support of its own motion for summary judgment. Entry of judgment for the State, therefore, was error.

## IV. JUDGMENT IS ENTERED IN FAVOR OF DE SOTO

In the usual case, this Court simply would reverse the grant of summary judgment to the State and remand for further proceedings. De Soto asks, however, that this Court grant its cross-motion for summary judgment, the overruling of which it also appealed. "Ordinarily, denial of a motion for summary judgment is an interlocutory order and is not a proper point on appeal." *James v. Paul, 49 S.W.3d 678, 682 (Mo. banc 2001)*. But, the State acknowledges in its brief that "the overruling of a party's motion for summary judgment can be reviewed when its merits are intertwined completely with a grant of summary judgment in favor of an opposing party." *Bob DeGeorge Assoc.'s, Inc. v. Hawthorn Bank, 377 S.W.3d 592, 596–97 (Mo. banc 2012)*.

The State recognizes that the issues here are intertwined. The State admits in its brief that both the State and De Soto sought summary judgment based on official publications of the population of cities and counties, relying on the 2010 census and a map of fire protection district boundaries and that the issues regarding whether the law is

12

a special law are questions of law.[9] Moreover, the State had the opportunity and obligation when bringing its own motion for summary judgment and when responding to De Soto's to attempt to show substantial justification once the law was shown to be a special law, but it failed to do so.

In such a case, because the State agrees that the two summary judgment motions are based on the same facts and law, and because this Court has held that the trial court's grant of judgment in favor of the State was in error because the law is a special one, no purpose would be served by remand. The trial court erred in failing to grant summary judgment to De Soto. Under Rule 84.14, this Court may enter the judgment the trial court should have entered.

## V. CONCLUSION

Section 321.322.4 is a special law and the State has not offered a substantial justification for its enactment when a general law will do, in violation of article III,

---

[9] The State does argue that if this Court agrees that a plaintiff is required to show that no city will fall into the statutory criteria in the future, then it should have a chance to determine on remand whether some city might have done so since this case was appealed. It was the State's obligation to present evidence in support of its own motion and in opposition to De Soto's motion for summary judgment, however, and the failure to do so cannot be avoided by speculation that at some future point it might find some evidence if the court just waits to see what the future might bring.

Equally, the State's reasoning would support leaving this or any case challenged as closed-ended open indefinitely to see if by chance another political subdivision could someday fit the statutory criteria. This is neither necessary nor proper. Moreover, De Soto already has shown that, as a practical matter, another city will not fall within the scope of the statute. The State has failed to provide substantial justification for a special law; there is no issue to remand.

13

section 40 of the Missouri Constitution.  The judgment of the trial court is reversed and this Court enters judgment in favor of De Soto.

_____
**LAURA DENVIR STITH, JUDGE**

All concur.

14