**STATE EX REL. DECKARD,**
et al., Appellants,

v.

**Eric SCHMITT, Treasurer of State of
Missouri, et al., Respondents.**

**WD 80154**

Missouri Court of Appeals,
Western District.

OPINION FILED: JULY 11, 2017

Application for Transfer to Supreme
Court Denied September 5,
2017

Application for Transfer Denied
November 21, 2017

Jason Joseph Iezzi, Independence, MO, Counsel for Appellants.

Cara Lee Harris, Springfield, MO, Counsel for Respondents.

Before Division Three: Anthony Rex Gabbert, Presiding Judge, Victor Howard, Judge, Cynthia L. Martin, Judge

Anthony Rex Gabbert, Judge

Franklin Neece and David Doherty ("Appellants" collectively) challenge the Judgment of the Circuit Court of Cole County, Missouri, denying their "First Amended Petition in Mandamus." Appellants also challenge the court's Order denying their Motion for Summary Judgment on their civil contempt claim in Count Three of their petition. We affirm.

### Factual and Procedural Background

On September 24, 2014, Appellants filed a First Amended Petition in Mandamus against the Director of the Missouri Division of Workers' Compensation, John Hickey, and the Treasurer for the State of Missouri, Eric Schmitt ("Respondents" collectively). Appellants alleged that they had been awarded permanent total disability compensation from the Second Injury Fund (SIF) by an administrative law judge and had reduced those awards to judgments in the circuit court. At the time the First Amended Petition was filed, Doherty had received no compensation or interest on that delayed compensation; Neece had been paid compensation but had received no interest on delayed compensatory payments.

In Counts One and Two of their First Amended Petition, Appellants alleged that Hickey had failed to fulfill his statutory duty to request warrants for payment of SIF funds to which Appellants are entitled, and that Schmitt had failed to fulfil his statutory duty to pay SIF funds owed to Appellants.[1] Appellants also claimed that Respondents had violated Article I, Section 13, of the Missouri Constitution by applying the 2014 version of Section 287.220 [2] retroactively to deprive Appellants of the full interest owed them. In Count Three Appellants alleged that, because Respondents had been ordered by the circuit court to pay Appellants their awards and had failed to do so, Respondents were in contempt.

Respondents acknowledged that Appellants had received Final Awards entitling them to workers' compensation, including interest, and that Judgments were issued ordering the SIF to pay compensation and/or applicable interest. Respondents further acknowledged that the SIF had not paid the ordered compensation and/or interest. Nevertheless, Respondents contended that they were "prohibited by SB I [3] from paying interest at this time" and that, "under law no award for permanent partial disability is payable at this time." With regard to the contempt allegation, Respondents contended that they were "prohibited by law from paying this judgment at the present time." Respondents

set forth several affirmative defenses to Appellants' allegations, including that Appellants' petition failed to assert a claim upon which relief could be granted, that Appellants' claims were barred by the doctrine of sovereign immunity, that the SIF is insolvent, and that Respondents had no unconditional duty to perform as alleged by Appellants because there was a genuine dispute of fact and law as to whether interest is currently payable and at what rate.

The case was submitted to the court on stipulated facts. Therein the parties agreed that Hickey is statutorily obligated to requisition warrants on Schmitt for payment of compensation and benefits out of the SIF. They agreed that upon receiving a requisition warrant, Schmitt is statutorily obligated to issue payments from the SIF. They agreed that Appellants had received final awards entitling them to workers' compensation benefits and that such compensation includes interest. They agreed that a circuit court had ordered the SIF to pay any interest that Neece's benefits accrued prior to January 1, 2014, and that the SIF had not paid that interest. They agreed that the SIF had not paid compensation or interest to Doherty. They agreed that Hickey had not requested warrants for the payment of Appellants' compensation and/or interest and that Schmitt, in turn, had not issued payment.[4] They

---

1. Count One represents Neece's claims and Count Two represents Doherty's claims; Neece's and Doherty's claims are substantially the same except that, at the time of filing, Neece had been paid all but accrued interest on his SIF award and Doherty had been paid nothing. All parties agree that Doherty has now been paid all but accrued interest on his SIF award. Consequently, all of Doherty's arguments on appeal regarding the necessity of mandamus to enforce payment of anything other than interest are now moot.

2. All statutory citations are to the Revised Statutes of Missouri as supplemented through January 1, 2017, unless otherwise noted.

3. SB I references a bill signed by Governor Jay Nixon on July 10, 2013, with an effective date of January 1, 2014, that, among other things, establishes a schedule of priority for paying SIF liabilities. This priority schedule was codified in Section 287.220.15.

4. The parties stipulated to additional, similar facts regarding the nonpayment of interest to

agreed that at all times mentioned in the Petition, the SIF's total outstanding liabilities had exceeded its income; they also agreed that the outstanding liabilities owed solely to Appellants had not, at any time mentioned in the Petition, exceeded the SIF's annual income or current balance.

On April 27, 2015, Appellants moved for summary judgment on their civil contempt allegation (Count Three of the First Amended Petition). Appellants alleged that, because Respondents had failed to comply with the lawful circuit court judgments ordering payment to Appellants of the SIF funds due them, Respondents should be held in contempt. On March 1, 2016, the circuit court denied Appellants' motion without comment.

On December 7, 2016, after considering the Stipulation of Facts submitted by the parties and argument of counsel, the court entered a Judgment denying Appellants' petition for writ of mandamus. The Judgment found that Appellants "failed to present evidence that Respondents have a mere ministerial non-discretionary duty to make their back due interest payments at this time," and that "a dispute exists . . . as to the proper rate of interest and the due date of interest payment[s] such as to preclude mandamus relief." This appeal follows.

### Point I—Denial of Summary Judgment Motion

■ In Appellants' first point on appeal, they argue that the circuit court misap-

"Relator Henley-Shepard." Hensley-Shepard is listed as plaintiff/appellant in Appellants' brief, but no mention of her is made elsewhere in Appellants' brief. No allegations concerning Hensley-Shepard were included in the First Amended Petition. It is unclear based on the record provided to this court when Hensley-Shepard was joined as a party.

plied the facts and the law in denying their motion for summary judgment as to their contempt claim. Appellants argue that they made a prima facie showing of contempt, which Respondents were unable to refute, and that Respondents could not establish their affirmative defenses. We find this claim unreviewable.

■ "[D]enial of a motion for summary judgment is an interlocutory order and is not a proper point on appeal." *City of DeSoto v. Nixon*, 476 S.W.3d 282, 290 (Mo. banc 2016) (internal quotation marks and citation omitted). While in some instances, the overruling of a motion for summary judgment can be reviewed when its merits are intertwined completely with a grant of summary judgment in favor of an opposing party, we do not have that here. *See Id.* Respondents never moved for summary judgment on any of Appellants' claims.

Here, solely with respect to the contempt claim, Appellants appeal the court's Order denying their motion for summary judgment and not the court's final Judgment; the final Judgment does not address Appellants' contempt claim. (We note that Appellants did not reference the contempt claim in the proposed Judgment they submitted to the court, evincing a belief that their motion for summary judgment was sufficient to preserve the claim for appellate review. It was not.) Once Appellants' summary judgment motion was denied by interlocutory order, "it was incumbent upon Appellant[s] to produce evidence in some manner at an evidentiary hearing" to

The original Petition in Mandamus was filed by Linda Deckard, Louetta Elwell, Franklin Neece, and Blake Nickels. On July 11, 2014, Deckard, Elwell, and Nickels voluntarily dismissed their claims without prejudice. On September 24, 2014, a First Amended Petition in Mandamus was filed by Neece and Doherty.

further pursue the contempt claim.[5] *Bryant v. Anderson*, 484 S.W.3d 381, 385 (Mo. App. 2016). They did not. As the interlocutory denial of Appellants' motion for summary judgment is not appealable, and they failed to pursue the contempt claim after that denial and submit the issue to the court for final judgment, Appellants effectively abandoned the claim.

Appellants' first point presents no appealable issue. It is denied.

### Point II—Denial of Mandamus

In their second point on appeal, Appellants contend that the circuit court misapplied the facts and the law in denying their petition for writ of mandamus. Appellants argue that the Judgment's findings were contrary to the stipulated facts, that the Judgment improperly applied the SIF statute in effect in 2014, that the Judgment improperly found that sovereign immunity applied, that the Judgment misinterpreted the nature of Respondent's duties, and that the Judgment improperly held that Appellants failed to state a claim for mandamus.

■ "An appellate court reviews the denial of a petition for a writ of mandamus for an abuse of discretion." *U.S. Dept. of Veterans Affairs v. Boresi*, 396 S.W.3d 356, 359 (Mo. banc 2013). The circuit court abuses its discretion if "the ruling is clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock the sense of justice." *State ex rel. Rosenberg v. Jarrett*, 233 S.W.3d 757, 761

(Mo. App. 2007) (internal quotation marks and citations omitted). "[T]he trial court necessarily abuses its discretion where its ruling is based on an erroneous interpretation of the law." *Bohrn v. Klick*, 276 S.W.3d 863, 865 (Mo. App. 2009). We evaluate a trial court's conclusions of law *de novo. State ex rel. Winkler v. Goldman*, 485 S.W.3d 783, 789 (Mo. App. 2016).

■ A writ of mandamus may issue "to compel the performance of a ministerial duty that one charged with the duty has refused to perform." *State ex rel. Office of Public Counsel v. Public Service Com'n of State*, 236 S.W.3d 632, 635 (Mo. banc 2007) (internal quotation marks and citation omitted). "To be entitled to a writ, a litigant asking relief by mandamus must allege and prove that he has a clear, unequivocal, specific right to a thing claimed." *Boresi*, 396 S.W.3d at 359 (internal quotation marks and citations omitted). "A writ of mandamus is appropriate where it is necessary to prevent great injury or injustice." *State ex rel. Farley v. Jamison*, 346 S.W.3d 397, 399 (Mo. App. 2011).

Appellants attack various findings within the court's Judgment that they claim led the court to erroneously deny their petition for mandamus. Because we affirm a trial court's judgment if it reached the correct result, we need not address all of Appellants' claims as we find one issue dispositive.[6] *See Dotson v. Dillard's, Inc.*, 472 S.W.3d 599, 603 n.2 (Mo. App. 2015). We find that Section 287.220.15 precludes Appellants' claim that they have a clear,

**5.** Although Respondents admitted to not paying Appellants' claims, Respondents also contended that they were "prohibited by law" from paying those claims, thereby asserting that denial of payment was not an act of contumacy. *See Tashma v. Nucrown, Inc.*, 23 S.W.3d 248, 252 (Mo. App. 2000) (discussing the elements of civil contempt.) We find no evidence in the record that Appellants put forth any evidence to refute this defense. In the Stipulated Facts presented to the court after the denial of Appellants' motion for summary judgment, there is no stipulation that denial of payment was an act of contumacy and certainly no stipulation that Respondents were in contempt.

**6.** We take no position on the merits of any claim of Appellants not addressed herein.

unequivocal right to require Respondents to pay the interest owed on their SIF awards.

Section 287.220.15 establishes a schedule of priority for paying SIF liabilities. It provides:

> The division shall pay any liabilities of the fund in the following priority:
>
> (1) Expenses related to the legal defense of the fund under subsection 4 of this section;
>
> (2) Permanent total disability awards in the order in which claims are settled or finally adjudicated;
>
> (3) Permanent partial disability awards in the order in which such claims are settled or finally adjudicated;
>
> (4) Medical expenses incurred prior to July 1, 2012, under subsection 7 of this section; and
>
> (5) Interest on unpaid awards.
>
> Such liabilities shall be paid to the extent the fund has a positive balance. Any unpaid amounts shall remain an ongoing liability of the fund until satisfied.

The circuit court, in its Judgment, concluded that Appellants had failed to prove an immediate right to interest payments because they failed to prove that "all back" permanent total disability awards, permanent partial disability awards, and certain medical expenses had been fully paid "which is required before interest payments under § 287.220.15 and 287.220.16[.]" Appellants do not dispute that Section 287.220.15 requires payment of permanent total disability awards, permanent partial disability awards, and certain medical expenses prior to the payment of interest, but contend that Section 287.220.15 became effective January 1, 2014, and does not apply retroactively to affect their awards. We disagree.

 Statutes are presumed to operate prospectively " 'unless the legislative intent that they be given retroactive application clearly appears from the express language of the act or by necessary or unavoidable implication." ' *Dept. of Soc. Servs. v. Villa Capri Homes, Inc.*, 684 S.W.2d 327, 332 (Mo. banc 1985) (quoting *Lincoln Credit Co. v. Peach*, 636 S.W.2d 31, 34 (Mo. banc 1982)). "Workers' compensation law is entirely a creature of statute, and when interpreting the law the court must ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms and give effect to that intent if possible." *Templemire v. W & M Welding, Inc.*, 433 S.W.3d 371, 381 (Mo. banc 2014) (internal quotation marks and citations omitted). Section 287.800 requires worker's compensation laws to be strictly construed and strict construction "presumes nothing that is not expressed." *Id.* Appellants contend that "there is no language showing an intent to apply the section retroactively." We disagree.

 Section 287.220.15 states that the "division shall pay *any* liabilities of the fund" in the specified order of priority. (Emphasis added). A common definition for "any" includes "every" and "all." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993). "Any," "every," and "all," SIF liabilities would include both pre and post-amendment liabilities. Appellants ignore this statutory language and argue that, because other sections of Section 287.220 specify retroactive dates of applicability, we must presume prospective application where no dates are specified. Appellants point as an example to Section 287.220.2 which begins: "All cases of permanent disability where there has been previous disability due to injuries occurring prior to January 1, 2014, shall be compensated as provided in this subsection. . . ." Yet, a comparison of pre-amendment Section 287.220 (1998) with the January 1, 2014, revision shows that in every

instance where "injuries occurring prior to January 1, 2014" are specified, the amended statute merely restates that particular pre-amendment version of the statute. Hence, the legislature did not draft new law to be applied retroactively in those instances but merely maintained the prior law's applicability in those specific subsections. In nearly every instance where the statute applies to injuries prior to January 1, 2014, there are corresponding new sections for injuries occurring after January 1, 2014.[7] Not all pre-amendment law applies to pre-amendment injuries, however.[8] Further, Section 287.220.7 is an example of pre-amendment applicability with no corresponding post-amendment application. Hence, because not every aspect of the prior law remains applicable to pre-amendment injuries, because some new laws apply to post-amendment injuries, and because the legislature expressed an intent to abrogate specific case law governing Chapter 287, the legislature took pains to identify which law governs pre-amendment SIF claims, post-amendment claims, and all claims.

7. Section 287.220.3 states, in part, that all claims against the SIF occurring *after* January 1, 2014, "shall be compensated as provided in this subsection."

8. The legislature stated in Section 287.020.10: In applying the provisions of this chapter, it is the intent of the legislature to reject and abrogate earlier case law interpretations on the meaning of or definition of "accident", "occupational disease", "arising out of", and "in the course of the employment" to include, but not be limited to, holdings in: *Bennett v. Columbia Health Care and Rehabilitation*, 80 S.W.3d 524 (Mo. App. W.D. 2002); *Kasl v. Bristol Care, Inc.*, 984 S.W.2d 852 (Mo. banc 1999); and *Drewes v. TWA*, 984 S.W.2d 512 (Mo. banc 1999) and all cases citing, interpreting, applying, or following those cases.
Section 287.220.3.(1) states that "All claims against the second injury fund for injuries occurring after January 1, 2014, and all

Section 287.220.15 is a completely new addition to Section 287.220 for which there was no previous counterpart. We find that, because care was taken throughout Section 287.220 to articulate the statutory range of applicability, the legislature's use of the words "any liabilities" in Section 287.220.15 was purposeful and evinces an intent to make both pre and post-amendment liabilities subject to the payment prioritization schedule.[9] A review of the circumstances existing at the time of Section 287.220.15's enactment supports this interpretation.

■ "Insight into the legislature's object can be gained by identifying the problems sought to be remedied and the circumstances and conditions existing at the time of the enactment." *Templemire v. W & M Welding, Inc.*, 433 S.W.3d at 381 (internal quotation marks and citations omitted). We cannot ignore that pending within Missouri courts at the time Section 287.220's amendment was drafted were claims identical to those raised herein by appellants. *Skirvin v. Treasurer of the State of Missouri* involved such claims.

claims against the second injury fund involving a subsequent compensable injury which is an occupational disease *filed* after January 1, 2014, shall be compensated as provided in this subsection." (Emphasis added). This provision suggests that an occupational disease injury occurring prior to January 1, 2014, is subject to the changed portion of the statute as the applicable portion of the statute is based upon date of filing rather than date of injury.

9. We note that Section 287.220.15(4) expressly includes "medical expenses incurred prior to July 1, 2012, under subsection 7 of this section." It seems illogical for the legislature to have intended for "all liabilities" to reference only post-amendment liabilities as Appellants suggest, and then include subsection 7 medical expenses incurred prior to July 1, 2012, as a fourth payment priority.

No. WD75541, 2013 WL 216028, at *1 (Mo. App. W.D. Jan 22, 2013).[10]

Appellant Skirvin, after being deemed permanently totally disabled, received an SIF award of $99.37 per week beginning on July 26, 2006, and continuing for sixty weeks, with weekly payments thereafter for life in the amount of $464.45. *Skirvin* at 2. In 2011, Skirvin was notified that although his award was scheduled for payment, SIF would be unable to make that payment due to its current balance and projections for the remainder of the fiscal year. *Id.* Skirvin filed a petition for writ of mandamus in the circuit court against the Treasurer for the State of Missouri (Treasurer) and Director of the Missouri Division of Workers' Compensation (Director) seeking to compel payment of the award. *Id.* Skirvin acknowledged that the SIF was insolvent, but argued that insolvency was no defense to Skirvin's right to secure a writ of mandamus to compel payment of his permanent total disability award. *Id.* at. 5. Skirvin claimed that SIF's limited resources were available on a first come/ first served basis to judgment creditors who secured writs of mandamus. *Id.* The Treasurer disagreed arguing that such would result in an unfair distribution of limited resources amongst similarly situated awardees. *Id.* Skirvin countered that SIF could seek bankruptcy protection if it desired to prioritize payment of its obligations. *Id.* The circuit court granted Skirvin a writ of mandamus against the Treasurer and Director ordering Skirvin be paid. *Id.* at 6. The Treasurer and Director appealed.

The majority of this court reversed the circuit court's Judgment concluding that, because a 2005 amendment to Section 287.715.2 eliminated the Director's authority to ensure that the SIF was sufficiently funded and/or replenished, the Director could not be compelled to pay the entirety of Skirvin's award. *Id.* at 28. The majority relied on *Sturdivant Bank v. Little River Drainage Dist.*, 334 Mo. 753, 68 S.W.2d 671, 676 (Mo. banc 1934), which held that mandamus cannot issue to compel payment from a fund with limited resources to serve those requesting mandamus on a first come, first served basis if the fund is not adequate to pay all claims; this is true even where the fund has adequate resources to pay an individual relator's claim. The majority stated:

> Simplified, the general rule is that a public officer cannot be compelled by mandamus to pay the full amount of a claim from an insolvent fund, defined as a fund that has insufficient funds to pay all claims where the public officer does not possess the power to sufficiently replenish the fund.

*Skirvin* at 17. The majority noted that the General Assembly had failed "to provide adequate funding for an exclusive avenue of recovery to which it requires injured employees to resort" and urged the General Assembly to promptly remediate the SIF funding crisis asserting that "the insufficient funding of SIF is imposing unfairness, inequity and extreme hardship on injured workers who possess largely unrecoverable judgments." *Id.* at 35.

**10.** Although *Skirvin* was transferred by this court to Missouri's Supreme Court and was ultimately dismissed as moot, the issues in *Skirvin* are instructive as it was pending before our Supreme Court when Section 287.220.15, was signed into law. This court issued its mandate and motion for transfer on January 22, 2013. The case was taken under submission by the Supreme Court on May 1, 2013. Senate Bill 1 (which includes Section 287.220.15) was signed into law by Governor Jay Nixon on July 10, 2013, with an effective date of January 1, 2014. *Skirvin* was dismissed by the Supreme Court on June 12, 2014. It appears from the record that, because the SIF paid Skirvin the money he claimed to be owed, the case was deemed moot.

The dissent in *Skirvin* found the obligations of the Director and Treasurer clear and unequivocal. *Skirvin* dissent at 3. The dissent considered that, because the ultimate obligor for claims against the SIF is the State itself, nothing prohibits "general revenue from being placed into the SIF to pay the claims against the State." *Id.* at 5. As the State was neither insolvent nor unable to timely pay legal obligations, the dissent concluded that mandamus should issue because, whether equitable or not, Skirvin was legally entitled "to go to the front of the line" under the "first come, first served" rule. *Id.* at 6.

While *Skirvin* was pending, our legislature amended, in part, Chapter 287 of Missouri's Revised Statutes. Portions of the amendment appear to be in direct response to issues raised in *Skirvin.* The amendment addresses SIF's funding deficits. In addition to an annual surcharge previously collected from policyholders and self-insureds under Section 287.715.2 to fund the SIF, Section 287.715.6 was added to require collection of a "supplemental surcharge" for calendar years 2014 to 2021.[11] Further, the amendment addresses whether Missouri's general revenue funds can be accessed to pay SIF liabilities. Section 287.715.7 is a new addition to the statute and provides that, "[f]unds collected under the provisions of this chapter shall be the sole funding source of the second injury fund." And, most relevant to the case at bar, the amendment codifies a legislative preference for prioritized payment of limited funds by creating a sched-

ule of payment priority for SIF liabilities. § 287.220.15.

In light of the plain language of Section 287.220.15 and the circumstances surrounding the addition of Section 287.220.15 to Chapter 287, we conclude that the words "any liabilities" evinces a legislative intent to make Section 287.220.15 applicable to both pre and post-amendment SIF obligations.[12] Appellants concede that the Respondents have not violated Section 287.220.15, and that if the section applies to their Judgments, they cannot establish that the Respondents violated a ministerial duty in failing to pay interest on the Judgments. Appellants' second point on appeal is denied.

### Conclusion

We conclude that the circuit court did not err in denying Appellants' petition for writ of mandamus. Section 287.220.15 establishes a prioritized payment schedule for the SIF's limited funds and Appellants failed to prove that all claims with priority over their own had been paid. We affirm the circuit court's judgment.

*All concur.*

---

11. All surcharges are to be deposited to the credit of the second injury fund. § 287.715.3.

12. We note that, to find Section 287.220.15 applicable only to post-amendment claims would allow the SIF to pay interest on all post-amendment liabilities prior to paying any pre-amendment liabilities (with the exception

of medical expenses incurred prior to July 1, 2012, under subsection 7 of Section 287.220). § 287.220.15(4). Such would run contrary to the legislature's suggested preference in Section 287.220.15(2)(3) for first paying awards in the order in which claims are settled or finally adjudicated.