

# SUPREME COURT OF MISSOURI
## en banc

CITY OF NORMANDY, et al., )  *Opinion issued April 15, 2025*
　　　　　　　　　　　　　　 )
　　　　Respondents, )
　　　　　　　　　　　　　　 )
v. ) No. SC100295
　　　　　　　　　　　　　　 )
MIKE KEHOE, in his )
official capacity as Governor of )
Missouri, et al., )
　　　　　　　　　　　　　　 )
　　　　Appellants. )

### APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
The Honorable Jon E. Beetem, Judge

In 2015, the general assembly enacted sections 67.287 and 479.359.2[1].  The city of Normandy, 11 other municipalities in St. Louis County, and two taxpayers brought an action asserting these statutes violated the prohibition against local or special laws in article III, section 40 of the Missouri Constitution.  In 2016, the circuit court entered judgment declaring these sections unconstitutional and enjoining the state from enforcing them.  This Court affirmed that judgment.  *City of Normandy v. Greitens*, 518 S.W.3d 183, 202 (Mo. banc 2017) ("*City of Normandy I*").

---

[1]  All statutory references are to RSMo 2016 unless otherwise noted.

Later, in *City of Aurora v. Spectra Communications Group, LLC*, 592 S.W.3d 764 (Mo. banc 2019), this Court rejected the closed-ended/open-ended dichotomy (which had been used to evaluate local or special laws claims in *City of Normandy I* and other recent cases) in favor of the rational basis analysis (which this Court previously used in such cases for more than a century). Believing sections 67.287 and 479.359.2 would have survived this rational basis review had it been used in *City of Normandy I*, the state filed a motion in the circuit court seeking relief from the injunctive aspects of the 2016 judgment. The state argued it was "no longer equitable" under Rule 74.06(b)(5) for the injunction to remain in place. The circuit court agreed and granted the state relief from the 2016 permanent injunction. This Court vacated that judgment and remanded the case for further proceedings on the ground that the change in analysis for local or special law challenges implemented in *City of Aurora* was neither necessary nor sufficient for relief under Rule 74.06(b)(5). *City of Normandy v. Parson*, 643 S.W.3d 311, 318 (Mo. banc 2022) ("*City of Normandy II*"). On remand, the circuit court overruled the state's motion for partial relief from judgment. The state appeals, and this Court has jurisdiction pursuant to article V, section 3 of the Missouri Constitution. The circuit court's judgment is affirmed.

## BACKGROUND

The general assembly passed Senate Bill No. 5 ("SB 5") in 2015 to bring needed reforms to municipalities and municipal courts. SB 5 contained multiple provisions, including one lowering the cap on municipal revenue from minor traffic violation fines and fees from 30 percent of total revenue to 20 percent. § 479.359.2. This new

2

20-percent cap did not apply statewide, however. Instead, SB 5 imposed an even lower cap of 12.5 percent for "any county with a charter form of government and with more than nine hundred fifty thousand inhabitants and any city, town, or village with boundaries found within such county[.]" § 479.359.2. Currently, this describes only St. Louis County and its municipalities. *City of Normandy I*, 518 S.W.3d at 188. Similarly, SB 5 imposed certain minimum standards for municipalities, including transparency in accounting practices and accreditation requirements for municipal police departments. § 67.287. These minimum standards, too, did not apply to all Missouri municipalities. Instead, section 67.287.1(2) defined "municipalities" to mean "any city, town, or village located in any county with a charter form of government and with more than nine hundred fifty thousand inhabitants[.]" Again, this describes only municipalities in St. Louis County. *City of Normandy I*, 518 S.W.3d at 188.

In 2016, the circuit court entered judgment declaring those provisions of SB 5 limited to St. Louis County and its municipalities unconstitutional under the prohibition against local or special laws in article III, section 40 of the Missouri Constitution. Based on that declaration, the circuit court entered a permanent injunction preventing the state from enforcing these provisions. This Court affirmed these aspects of the circuit court's judgment.[2] *Normandy I*, 518 S.W.3d at 202.

---

[2] The circuit court also declared sections 67.287 and 479.359 violated article X, sections 16 and 21 of the Missouri Constitution, but this Court reversed that portion of the judgment because those claims were not ripe for review. *Normandy I*, 518 S.W.3d at 202-03. That issue is not before the Court in this appeal.

3

In 2020, shortly after this Court's decision in *City of Aurora*, the state sought relief under Rule 74.06(b)(5) from the permanent injunction in the circuit court's 2016 judgment in *City of Normandy I*. The state contended SB 5 would not have been declared unconstitutional if it had been subjected to a rational basis analysis (i.e., if it had been decided after *City of Aurora* rather than before), and this was sufficient to establish it was "no longer equitable" for the injunction to remain in force under Rule 74.06(b)(5). The circuit court agreed and sustained the state's motion, vacating the permanent injunction and permitting the state to enforce the provisions of sections 67.287 and 479.359.2. The municipalities appealed, and this Court vacated the circuit court's judgment on the ground that "[a] change in decisional law is neither necessary nor sufficient to warrant relief from judgment under Rule 74.06(b)(5)." *Normandy II*, 643 S.W.3d at 314, 317. Instead, the Court remanded the use for further proceedings to allow the circuit court to weigh the equities associated with the state's request to lift the permanent injunction. *Id*. On remand, the circuit court found the equities did not favor lifting the injunction and overruled the state's motion. The state appeals.

## ANALYSIS

Both parties assert the correct standard of review is abuse of discretion, as a general matter, this Court agrees. *Henry v. Piatchek*, 578 S.W.3d 374, 377-78 (Mo. banc 2019) ("This Court reviews the overruling of a Rule 74.06(b) motion under the abuse of discretion standard."). As with any court-tried case, this Court will not defer to the circuit court's decisions about questions of law but will defer to its express or implied findings when material facts are disputed. *Bd. of Educ. of City of St. Louis v. Mo. State*

4

*Bd. of Educ.*, 271 S.W.3d 1, 7 (Mo. banc 2008).   The ultimate question of whether it is inequitable to leave the injunction in effect, however, is committed to the circuit court's discretion.  *Henry*, 578 S.W.3d at 378.  "A ruling constitutes an abuse of discretion when it is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration."  *Cox v. Kan. City Chiefs Football Club, Inc.*, 473 S.W.3d 107, 114 (Mo. banc 2015) (quotation omitted).  As appellant, the state bears the burden of showing the circuit court abused its discretion in overruling the state's motion for relief from the permanent injunction.

## I.     The circuit court's decision was not a *per se* abuse of discretion

The state's principal argument is that the circuit court's overruling of the state's Rule 74.06(b)(5) motion was a *per se* abuse of discretion because, under the change in law announced in *City of Aurora*, sections 67.287 and 479.359.2 are not unconstitutional.  This argument, upon which most of the state's arguments are built, fails for many reasons.

First, this Court expressly rejected this argument in *Normandy II*, holding it is ***not*** a *per se* abuse of discretion to deny relief from a permanent injunction under Rule 74.06(b)(5) even if the decisional law on which the injunction was based has been overruled.  *Normandy II*, 643 S.W.3d at 314.  "A previous holding constitutes 'law of the case,' precluding relitigation of issues on remand and subsequent appeal."  *Am. Eagle Waste Indus., LLC v. St. Louis Cnty.*, 379 S.W.3d 813, 825 (Mo. banc 2012) (citing *Williams v. Kimes*, 25 S.W.3d 150, 153 (Mo. banc 2000)).  In short, the state is not

5

permitted to challenge in this appeal a holding this Court announced and applied in *Normandy II*.

Even if the state's argument were not barred by the law-of-the-case doctrine, it would still fail. As set forth in *Normandy II*, the principle of finality is a cornerstone of our system of justice. *Normandy II*, 643 S.W.3d at 313-14. Right or wrong, for better or worse, the disputes presented in our courts must be resolved, and those resolutions must be final. "[T]here must always be an end to litigation and a certainty as to the rights of litigants must be achieved so that dignity and respect for judicial determinations will be maintained." *Id.* at 314 (quoting *Goldsmith v. M. Jackman & Sons, Inc.*, 327 F.2d 184-85 (10th Cir. 1964)). "This Court carefully guards the principle of finality of judgments and will not casually allow a final judgment to be set aside." *Glendale Shooting Club, Inc. v. Landolt*, 661 S.W.3d 778, 782 (Mo. banc 2023).

This is not to say there can never be relief from a permanent injunction or other judgment with prospective relief. "[T]his Court has provided very ***narrow*** exceptions allowing for relief from judgment in very ***limited*** circumstances." *Id.* (emphasis added). These "narrow exceptions" and "limited circumstances" are set forth in Rule 74.06, including the provision in Rule 74.06(b)(5) allowing a court to relieve a party from a prospective judgment when "it is no longer equitable that the judgment remain in force." The touchstone of Rule 74.06(b)(5), however, is equity. The state's contention that a change in the decisional law, without more, always justifies relief from a permanent injunction is an anathema to the principles of equity. *Normandy II*, 643 S.W.3d at 316. "[T]here are multiple relevant considerations that go into determining whether a court

6

should grant a Rule 74.06(b)(5) motion[,]" and a court of equity "must evaluate a number of potentially competing considerations to determine whether to modify or vacate an injunction entered by consent or otherwise." *Glendale Shooting* Club, 661 S.W.3d at 783 (quotations omitted).

*Normandy II* holds a "change in decisional law is neither necessary nor sufficient to warrant relief from judgment under Rule 74.06(b)(5)." *Normandy II*, 643 S.W.3d at 314. As noted, the state is bound by this holding as law of the case. Even if that were not so, this Court reached the same conclusion in *Glendale Shooting Club*, holding – even if there has been a change in the law – Rule 74.06(b)(5) always requires "a showing of inequity demonstrating the necessity of vacating or modifying a permanent injunction." *Glendale Shooting Club*, 661 S.W.3d at 783. The state's arguments that this Court should overrule a principle so recently stated are not persuasive.

The third reason the state's argument that it is *per se* entitled to relief from the 2016 permanent injunction on the ground that sections 67.287 and 479.359.2 are not unconstitutional must fail is that the state's argument is based on an incorrect premise. The same 2016 judgment imposing the permanent injunction also contained a declaratory judgment that these statutes violated article III, section 40 of the Missouri Constitution. This Court affirmed that declaration, and the state has **never** sought relief from that part of the judgment.[3] Therefore, this declaration remains in effect regardless of the fate of the state's Rule 74.06(b)(5) motion.

---

[3] In 2020, the state moved for "Partial Relief" from the 2016 judgment. In that motion, the state limited its argument to the permanent injunction and its prospective effect. The

7

When a statute is declared unconstitutional, that declaration has a definite and certain effect. "An unconstitutional statute is no law and confers no rights. This is true from the date of its enactment, and not merely from the date of the decision so branding it." *State ex rel. Miller v. O'Malley,* 117 S.W.2d 319, 324 (Mo. banc 1938) (citation omitted); *see also Trout v. State*, 231 S.W.3d 140, 148 (Mo. banc 2007) (same).[4] This is true regardless of whether the declaration is accompanied by a permanent injunction. A permanent injunction is merely a remedy, not a cause of action. *LO NG Pharmacy Corp.*

---

motion's conclusion makes a single reference to the declaration, but nowhere in the motion does the state make any argument that it should be relieved of the declaratory portion of the judgment rather than just the injunction. Even if it had, the state's pertinent points relied on in this appeal all begin with the following: "The trial court erred in denying the State's Motion for Partial Relief ***from the trial court's permanent injunction*** …." (Emphasis added). They make no mention of having sought – or being denied – relief from the 2016 declaratory judgment. One reason for the state's choice may be that, as the state notes, "Missouri courts have recognized Rule 74.06(b)(5) applies only to judgments that have prospective effect." *Normandy II*, 643 S.W.3d at 314. A permanent injunction necessarily has such prospective effect because it "often requires continuing supervision by the issuing court and always a willingness to apply its powers and processes on behalf of the party who obtained the equitable relief." *Id*. (quotations omitted). A declaratory judgment, on the other hand, generally requires no such "continuing supervision" or enforcement. As a result, it may be that a party cannot seek relief from a declaratory judgment under Rule 74.06(b)(5). That question need not be answered here, however, because the state never sought relief from the 2016 declaratory judgment and does not claim the circuit court erred in denying such relief.

[4] The state cites a law review article rejecting the "assumption that a judicial pronouncement of unconstitutionality has cancelled or blotted out a duly enacted statute," leaving nothing for the executive to enforce now or in the future. Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 VA. L. REV. 933, 937 (2018). As the cases quoted above demonstrate, however, Missouri courts have long held otherwise. *See also Barr v. Am. Ass'n of Political Consultants, Inc.*, 591 U.S. 610, 627 (2020) (discussing severance and noting, "in Chief Justice Marshall's words, the Court recognizes that the Constitution is a 'superior, paramount law,' and that 'a legislative act contrary to the constitution is not law' at all" (quoting *Marbury v. Madison*, 5 U.S. 137, 177 (1803)).

*v. Express Scripts, Inc.*, 747 F. Supp. 3d 1203, 1211 (E.D. Mo. 2024) ("Injunctive relief is a remedy, not an independent cause of action." (quotation omitted)). As long as the 2016 declaration that sections 67.287 and 479.359.2 are unconstitutional remains – and the state has ***not*** sought relief from it – then there is no law for the state to enforce whether the permanent injunction stands or not. *Mo. Soybean Ass'n v. Mo. Clean Water Comm'n*, 102 S.W.3d 10, 22 (Mo. banc 2003) (holding appellate courts are "primarily concerned with the correctness of the result [and] … the trial court's judgment will be affirmed if it is correct on any ground supported by the record, regardless of whether the trial court relied on that ground").

## II.     The circuit court did not abuse its discretion in finding the equities do not weigh in favor of sustaining the state's motion

In addition to the state's "*per se* abuse of discretion" argument, which fails for each of the three independent reasons above, the state also argues the circuit court improperly weighed the equities and incorrectly concluded those equities did not favor lifting the 2016 permanent injunction. With respect to these equities, the state insists: (1) sections 67.287 and 479.359.2 are constitutional under *City of Aurora*; (2) removing the injunction will not burden St. Louis County and its municipalities; (3) if there are burdens from lifting the injunction, this Court can lessen them by delaying the effective date of the order lifting the injunction; (4) the importance of finality weighs decidedly in favor of lifting the injunction; and (5) the state argued for a return to a rational-basis test in *Normandy I* even though the Court did not adopt that position until *City of Aurora*. None of these contentions, nor the combined effect of them, suffices to demonstrate the

9

circuit court abused its discretion in finding the equities did not weigh in favor of sustaining the state's Rule 74.06(b)(5) motion.

First, there is no basis for the state's assertion that sections 67.287 and 479.359.2 are constitutional. That issue was decided against the state in 2016, the circuit court entered both a declaratory judgment to that effect and a permanent injunction against enforcing these statutes, and this Court affirmed that decision in *City of Normandy I*. Now, nearly a decade later, the state's argument proceeds as follows: (a) sections 67.287 and 479.359.2 would have passed constitutional muster if *City of Aurora* had been decided before *City of Normandy I*; (b) this is a sufficient basis on which to vacate the 2016 permanent injunction; and (c) when the 2016 injunction is lifted, the municipalities' claims will be relitigated under *City of Aurora* and surely fail. This circular argument steps on its own tail. Sections 67.287 and 479.359.2 have been found to be unconstitutional. *City of Normandy I*, 518 S.W.3d at 202. That judgment is the law until it is set aside. No matter how firmly the state believes it would prevail if the case were retried today, the state cannot cite its own conviction as a basis for bringing about the retrial it believes it will win. Were it so, the circuit courts would be clogged with Rule 74.06(b)(5) motions.

Following *City of Normandy II*, the circuit court on remand made no determination that sections 67.287 and 479.359.2 were constitutional under the rational basis analysis set forth in *City of Aurora*. That issue was not before the circuit court on

10

remand, and it is not before this Court now.[5]  In *Normandy II*, this Court stated it did not need to reach that question and, "even if this Court would have reached a different conclusion regarding the municipalities' claims after *City of Aurora* than it did before – a question this Court does not here address – that is merely the first step in this analysis under Rule 74.06(b)(5), not the last."  *City of Normandy II*, 643 S.W.3d at 317.  That admonition continues to apply.  Neither this Court nor the circuit court has had to reach or decide this question to resolve the state's Rule 74.06(b)(5) motion.  Accordingly, the state's argument that sections 67.287 and 479.359.2 are constitutional cannot succeed and does not tip the scales of equity in its favor.

Second, the state claims the St. Louis County municipalities would not be burdened if sections 67.287 and 479.359.2 were to become enforceable now, nearly a decade after the permanent injunction prohibiting their enforcement was entered and affirmed.  The circuit court disagreed, and this Court affirms that decision.  The question is not whether the county or its municipalities can comply or how difficult it would be for them to do so.  Instead, the question is whether the entry of the 2016 permanent

---

[5]   Though the issue is not before the Court, it is worth noting that the state's arguments frequently misstate *City of Aurora* in claiming it requires only that there be a rational basis for the general assembly to seek to reform municipalities and municipal courts in St. Louis County.  This is not correct.  *City of Aurora* makes clear that, to fall outside the prohibition in article III, section 40 of the Missouri Constitution, there must be a rational basis for those locations where a law applies **and** where it does not.  *City of Aurora*, 592 S.W.3d at 780 & n.11 ("[I]f the line drawn by the legislature [between locations covered by a law and those excluded from its effects] is supported by a rational basis, the law is not local or special and the analysis ends.").

injunction, and the years that since have passed, deprived these municipalities of the grace periods the general assembly intended them to have before becoming subject to the obligations in sections 67.287 and 479.359.2.  At most, this is a question of statutory construction, not fact, and the burden of lifting the 2016 permanent injunction is plain.

> Section 67.287.2 lists multiple services the municipalities must provide, including insurance policies, written orders and policies for a variety of different issues, and improved management and accounting systems. Originally, section 67.287.2 gave the municipalities three years from August 28, 2015, to provide those services. Section 67.287.2 also gave the municipalities six years to have a police department accredited or certified by the Commission on Accreditation for Law Enforcement Agencies or the Missouri Police Chiefs Association or a contract with a police department with such accreditation. Because more than six years has passed since August 28, 2015, the municipalities would be forced to provide those services immediately. Gone would be the grace period the General Assembly saw necessary to provide the municipalities when it enacted SB 5.

*City of Normandy II*, 643 S.W.3d at 317 n.6.  The circuit court did not abuse its discretion in deciding the burdens of reinstating enforcement weigh against sustaining the state's motion because the municipalities would not have the benefit of the grace periods the general assembly intended them to have.

Third, the state argues the burdens referred to in the preceding argument can be lessened or eliminated if this Court (or the circuit court) sustains the state's Rule 74.06(b)(5) motion immediately with respect to some aspects of sections 67.287 and 479.359.2 but with a three- or six-year (or longer) delay with respect to others.  The state finds authority for this in Rule 74.06(b)(5), which permits the circuit court to sustain a motion under that rule "upon such terms as are just."  Without needing to explore the reach of this language, this Court is not inclined to use it to justify lifting different parts

12

of a permanent injunction at different times. The business of fashioning aspects of statutes such as delayed effective dates, grandfather clauses, or safe-harbor provisions is uniquely suited to the policy making role of the general assembly, and this Court will not presume decisions the general assembly made in 2015 necessarily would (or should) be made the same way today. For this reason, the state's argument is rejected.

Fourth, the state argues the importance of finality "favors the State in all its facets." The circuit court disagreed, and this Court affirms. The "importance of finality" referred to by the circuit court and by this Court in *Normandy II* – but not by the state – is the importance of the finality of judgments. *See Glendale Shooting Club*, 661 S.W.3d at 782 ("This Court carefully guards the principle of finality of judgments and will not casually allow a final judgment to be set aside."). This Court addressed the importance of finality of judgments at great length in *Normandy II*, 643 S.W.3d at 313-14, 317, and no purpose is served by repeating that discussion here. Suffice it to say, the state's argument affords little or no weight to the finality of the 2016 judgment, which likely stems from the premise underlying all the state's arguments, i.e., that the 2016 judgment was wrong when entered and would not have happened if the case were litigated after *City of Aurora* rather than before it. The purpose of Rule 74.06(b)(5), however, is not to give dissatisfied litigants a second (or third) bite at the apple to reach the result they believe should have been reached initially. On remand, the circuit court gave the finality of the 2016 judgment substantial weight and did not abuse its discretion in making this decision.

13

Fifth, the state insists it argued – in *City of Normandy I* – for the rational-basis analysis this Court did not return to until *City of Aurora*. The circuit court found the state made no such argument, and this Court agrees. In the circuit court and in this Court in *City of Normandy I*, the state argued only that the open-ended/closed-ended dichotomy used to evaluate local or special law claims in cases such as *Jefferson County Fire Protection Districts Ass'n v. Blunt*, 205 S.W.3d 866 (Mo. banc 2006), and *City of St. Louis v. State*, 382 S.W.3d 905 (Mo. banc 2012), should be used to defeat the municipalities' claims. Nowhere did the state argue for the restoration of the rational-basis analysis this Court implemented in *City of Aurora*. The state's few uses of the phrase "rational basis," cherry-picked from many dozens of pages of briefing, are insufficient to cast doubt on the accuracy of the circuit court's finding.

Finally, the state argues the circuit court should have considered the "public interest" in weighing the equities involved in the state's Rule 74.06(b)(5) motion. If the circuit court had, the state argues the public interest would have weighed strongly in favor of sustaining its motion. The state's argument mischaracterizes the circuit court's decision. The "public interest" runs throughout all of the issues the circuit court discussed in its judgment overruling the state's Rule 74.06(b)(5) motion and many other issues supporting the circuit court's decision though not expressly referred to in it.

The state devotes much of its briefing to *Building & Construction Trades Council of Philadelphia & Vicinity, AFL-CIO v. N.L.R.B.*, 64 F.3d 880, 888 (3d Cir. 1995), and the factors set forth there for evaluating a motion seeking relief from an injunction under

14

federal Rule 60(b)(5) (permitting relief when "it is no longer equitable" that the judgment should have perspective application). That court stated:

> [T]he standard for modifying an injunction cannot depend on whether the case is characterized as an institutional reform case, a commercial dispute, or private or public litigation. Different considerations may have greater or lesser prominence in different cases, not because the cases are characterized one way rather than another but because equity demands a flexible response to the unique conditions of each case.
>
> We abjure establishing a rigid, pervasively applicable rule, although it may be helpful to set forth the factors that generally should be considered in deciding whether to modify an injunction. These include the circumstances leading to entry of the injunction and the nature of the conduct sought to be prevented; the length of time since entry of the injunction; whether the party subject to its terms has complied or attempted to comply in good faith with the injunction; and the likelihood that the conduct or conditions sought to be prevented will recur absent the injunction. Central to the court's consideration will be whether the modification is sought because changed conditions unforeseen by the parties have made compliance substantially more onerous or have made the decree unworkable. Courts which have faced similar issues also have identified as a relevant factor whether the conduct previously enjoined has become legal due to a change in the law[.]

*Bldg. & Const.*, 64 F.3d at 888 (citations omitted).

The state's reliance on this case and its discussion of federal Rule 60(b)(5) highlight the central misunderstanding on which the state built its argument. The purpose of the 2016 permanent injunction was not a fiercely litigated or negotiated effort to tailor a private or governmental actor's conduct to the dictates of the law. Instead, it played the largely gratuitous role of prohibiting the state from enforcing a statute that had been declared unconstitutional. As long as that declaration remains – a judgment from which the state never has sought relief – there is no statute to enforce.

15

When *Building & Construction* and the other cases on which the state relies refer to "changes in the law," they refer to post-judgment changes allowing what the relevant injunction prohibits or prohibiting what the injunction allows. *Id.* Here, the only "change in law" was this Court returning to a rational-basis review in *City of Aurora* as a means of evaluating local or special law claims under article III, section 40 of the Missouri Constitution. The constitution did not change,[6] and the change of analysis implemented by *City of Aurora* does not permit what the 2016 permanent injunction prohibits (i.e., enforcement of sections 67.287.2 and 479.359.2). At best, *City of Aurora* merely forms the basis for the state's assertion that – if it could try the case again – it would win and then there would be no barrier to enforcing these statutes. The state cites no authority in which such an argument prevailed under Rule 74.05(b)(5) or any other state or federal analog. This is not surprising given that the change this Court adopted in *City of Aurora* was not the sort of "change in the law" discussed in the authorities the state cites. And, because the state made no effort to show any change in circumstances other than *City of Aurora*, the circuit court did not abuse its discretion in overruling the state's Rule 74.05(b)(5) motion.[7]

---

[6] Even if the constitution had been amended after 2016 to permit local and special laws, a statute declared invalid under the prior constitutional language does not magically spring back to life. "[T]his Court has stated that an unconstitutional statute 'is not validated by a subsequent constitutional amendment, except, possibly, where the latter ratifies and confirms it ....' Without express ratification and confirmation, the statute ***must be reenacted***." *Armco Steel v. City of Kan. City, Mo.*, 883 S.W.2d 3, 7 (Mo. banc 1994) (quoting *State v. O'Malley,* 117 S.W.2d 319, 324 (Mo. banc 1938)).

[7] In addition to its arguments that the circuit court misidentified and/or improperly weighed the equities of the state's Rule 74.06(b)(5) motion, the state also argues the

16

**CONCLUSION**

In sum, the circuit court was well within its discretion when it found the equities did not weigh in favor of sustaining the state's Rule 74.06(b)(5) motion.[8]  Nothing in the circuit court's decision is clearly against the logic of the circumstances or so unreasonable and arbitrary that it indicates a lack of careful and deliberate consideration

---

circuit court erred in denying its discovery requests.  On remand, the state demanded the municipalities produce, for a five-year period, what amounts to every piece of paper in or concerning their municipal courts, police forces, and city governments.  Little of the state's burdensome requests were reasonably calculated to lead to relevant and admissible evidence and, coming at the end of a decade-long litigation, such requests sorely test any presumption of good faith.  Circuit courts "have broad discretion in administering rules of discovery, which this Court will not disturb absent an abuse of discretion."  *State ex rel. Delmar Gardens N. Operating, LLC v. Gaertner*, 239 S.W.3d 608, 610 (Mo. banc 2007).  The circuit court did not abuse its discretion in denying the state's discovery request.  The circuit court's decision overruling the state's Rule 74.06(b)(5) motion was not based on a finding that facts and circumstances have changed since 2016.  Presumably, a proper use of Rule 74.06(b)(5) would require a factual record identifying those facts and circumstances that have changed since the judgment was entered and that render it inequitable for the judgment to remain in force.  But that is not, and never has been, the state's argument in this case.  Accordingly, the circuit court did not err in denying the state's discovery request and, even if it had, the state makes no effort to show such an error was prejudicial.  *See* Rule 84.13(b) (prohibiting any appellate court from reversing any judgment unless it finds the circuit court erred and the error "materially affect[ed] the merits of the action").

[8]  At the end of the decision in *City of Normandy II*, the Court observed the following, which remains true today:

> [T]he state is not without recourse.  Were the provisions of SB 5 that were held unconstitutional in the 2016 judgment to be reenacted, they would not be governed by the 2016 judgment and, if the state is correct in arguing that such provisions would survive the rational basis scrutiny employed in *City of Aurora*, challenges to those new provisions would fail.

*City of Normandy II*, 643 S.W.3d at 317 n.7.

17

or shocks the Court's sense of justice.  Accordingly, the circuit court's judgment is affirmed.

_____
Paul C. Wilson, Judge

All concur.